[Crim. No. 12753. In Bank. Mar. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ANTHONY GREEN, Defendant and Appellant.

656

Cooney & Cooney and Terrence W. Cooney for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David B. Stanton, Deputy Attorney General, for Plaintiff and Respondent.

MOSK, J.—Defendant John Anthony Green was convicted of violating Health and Safety Code section 11532 (furnishing a narcotic to a minor) upon evidence consisting chiefly of the testimony and prior inconsistent statements of the minor to whom defendant allegedly furnished narcotics. Defendant challenges the constitutionality of Evidence Code section 1235, which provides for admission of prior inconsistent statements of a witness to prove the truth of the matters asserted therein, as applied to testimony elicited at a preliminary hearing. On the basis of recent decisions of this court and the United States Supreme Court, we conclude that section 1235 as so applied is unconstitutional and therefore the conviction must be reversed.

After a preliminary hearing, defendant was charged with furnishing marijuana to one Melvin Porter, a minor. He was tried and convicted by a court sitting without a jury. The

chief witness for the prosecution was young Porter, who was markedly evasive and uncooperative on the stand. He testified that defendant had telephoned him in January 1967 and asked him to sell some unidentified "stuff." He admitted he had obtained 29 plastic "baggies" of marijuana, some of which he sold and the rest of which was purportedly stolen from him. He testified that he was uncertain how he obtained the marijuana, primarily because he was on "acid" (LSD) at the time and could not then distinguish fact from fantasy. At various points Porter was impeached by the prosecution by the use of his testimony at the preliminary hearing, in which he had stated that defendant had specifically asked him to sell marijuana and that he obtained the marijuana from the yard of defendant's parents' home, at the behest and direction of defendant. This preliminary hearing testimony was admitted as a prior inconsistent statement under section 1235 of the Evidence Code.[1]

Following the deputy district attorney's reading of the preliminary transcript, Porter testified that his testimony at that hearing was the truth as he then believed it, and that his memory was now refreshed and he "guessed" he had obtained the marijuana from defendant's parents' yard and had given the money from its sale to defendant. However, on cross-examination Porter conceded that in fact it was his memory not of the events themselves but of the preliminary testimony which was refreshed, and he was still unsure and had no present recollection of the actual episode.

Later in the trial still another version of Porter's story was offered and admitted. Officer Wade testified that Porter had told him during a conversation at juvenile division headquarters that defendant came to Porter's house and personally delivered the marijuana to him. This statement was also admitted under Evidence Code section 1235 as a prior inconsistent statement. Like the preliminary hearing testimony, it was admitted for the purpose of proving the truth of the matter stated therein, as then sanctioned by the code.

Only one other item of evidence appeared to link defendant with Porter: the testimony of Officer Dominguez, an undercover officer, that he attempted to buy narcotics from Porter, who told him he would have a supplier named "John" contact him. In fact, defendant contacted Dominguez and pur-

---

[1]We assume for purposes of discussion that the preliminary hearing testimony was in fact "inconsistent" with the witness' testimony at trial.

ported to be a narcotics supplier; but when defendant insisted that Dominguez take narcotics with him to show good faith, the sale fell through. Defendant admitted the incident but explained that Porter asked him and he agreed to help expose a suspected undercover officer by a bogus sale. Defendant denied ever being in possession of narcotics. No charges were ever filed in connection with this purported transaction, and the trial court carefully limited its admission to the narrow purpose of showing that "Porter and the defendant had previous associations and were acquainted."

Defendant contends that the admission of the prior inconsistent statements of Porter as evidence of the truth of the matters stated therein—as opposed to admission for impeachment only—was unconstitutional and contrary to our recent holding in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal. Rptr. 599, 441 P.2d 111] (cert. denied 1969, 393 U.S. 1051 [21 L.Ed.2d 693, 89 S.Ct. 679]), and that its admission constituted prejudicial error under the standards of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. The People concede that the testimony of Officer Wade was inadmissible under *Johnson,* but assert that this error was not prejudicial.[2] As for the preliminary hearing testimony, the People urge that *Johnson* does not or should not preclude its evidentiary use since defendant had an opportunity to cross-examine the declarant Porter at the time the statement was made. This rationalization is not persuasive.

In *Johnson* we held that Evidence Code section 1235, insofar as it provides for admission of prior inconsistent statements as evidence of the truth of the matters stated therein, is

---

[2]There is no question but that both prior statements were offered, admitted, and considered as evidence of the facts stated therein. We cannot accept the tardy view propounded in the People's supplementary brief that the court did not rely upon this evidence, and in fact considered only the abortive transaction between defendant and Officer Dominguez as proof of defendant's guilt. In addition to his references to section 1235 at the time of admission, the deputy district attorney urged during closing argument that both these prior statements be considered "as much evidence . . . as if [Porter] said it from the witness stand. . . ." Moreover, we must take note of both the trial court's specific limitation, referred to earlier, of Officer Dominguez' testimony to showing that defendant and Porter were "acquainted," and the fact that the People in their opening brief rely heavily on Porter's statements in supporting the sufficiency of the evidence and specifically assert that the court "nowhere states that it did not believe that portion of Porter's testimony which . . . is sufficient to support the judgment." According to the People, "The trial court simply found that for all of Porter's obstinate evasiveness on the stand, the fact of appellant's furnishing stood clear in his mind." We read the trial court's opinion in accord with this latter statement.

unconstitutional when applied to testimony before a grand jury without the presence of the defendant, his counsel, or the ultimate trier of fact. As a consequence *Johnson* returned California law in this area to the general common law rule which prevailed prior to passage of the Evidence Code, limiting admission of prior inconsistent statements in criminal cases to impeachment purposes. Our decision was impelled by recent cases articulating the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution. (E.g., *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065] ; *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318].)

The complaining witnesses in *Johnson* had testified before the grand jury to acts of incest by the defendant. However, at trial these witnesses changed their stories and denied the truth of their prior testimony, claiming they had fabricated the incest charge out of spite. The grand jury testimony was admitted under Evidence Code section 1235, and on the basis of that evidence the defendant was convicted. We reversed, declaring that such evidentiary use of the grand jury testimony was in violation of the confrontation clause of the Constitution. In response to the People's contention that the witnesses could be cross-examined at trial, we stated: "To assert that the dangers of hearsay are 'largely nonexistent' when the declarant can be cross-examined at some later date, or to urge that such cross-examination puts the later trier of fact in 'as good a position' to judge the truth of the out-of-court statement as it is to judge contemporary trial testimony, is to disregard the critical importance of *timely* cross-examination." (Italics in original.) (*People* v. *Johnson* (1968) *supra,* 68 Cal.2d 646, 655.) ▮ Belated cross-examination before the trial court, such as was available to defendant in the instant case, is not an adequate substitute for the right to cross-examination contemporaneous with the original testimony before a different tribunal.

We recognize that the case before us differs from *Johnson* in a significant respect. Here, unlike *Johnson,* defendant had an opportunity to cross-examine the witness at the time the prior inconsistent statements were made, i.e., at the preliminary hearing. This, assert the People, is a constitutonally adequate fulfillment of the right of confrontation. However, their contention overlooks the thrust of our opinion in *Johnson* and the realities of the preliminary hearing system, and directly

conflicts with the recent stance of the United States Supreme Court.

*Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318], cited and relied upon in *Johnson,* involved the "unavailable witness" exception to the hearsay rule. A key witness who had testified at a preliminary hearing was confined in prison elsewhere at the time of trial. The prosecution made little or no effort to compel his presence at the trial, and instead was allowed to read into evidence the transcript of his preliminary testimony. The defendant had not cross-examined the witness at the preliminary hearing, although a codefendant had done so. There was a close question whether the defendant had waived his right to cross-examine at the preliminary hearing, but the court found no waiver and in effect found no opportunity for cross-examination. Concluding that the prosecution had not made a sufficient effort to have the witness present, the court ruled that no unavailability—and hence no "necessity"—was demonstrated to justify the "prior testimony" hearsay exception and to overcome the defendant's right of confrontation.

However, the opinion in *Barber* v. *Page* did not stop at that point. Since the question of cross-examination and waiver was close, the court went on to make its position unequivocally clear regarding the value of cross-examination at a preliminary hearing in lieu of cross-examination at trial. In language we substantially quoted in *Johnson* (68 Cal.2d at p. 659, fn. 9), the high court stated: "Moreover, we would reach the same result . . . had petitioner's counsel actually cross-examined [the witness] at the preliminary hearing. . . . The right to confrontation is basically a trial right. *It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial,* simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial. While there may be some justification for holding that the opportunity for cross-examination of testimony at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not . . . such a case." (Italics added.) (*Barber* v. *Page* (1968) *supra,* 390 U.S. 719, 725-726 [20 L.Ed.2d 255, 260, 88 S.Ct. 1318].) This expression was more than a mere dictum, as the Supreme Court has since demonstrated. In *Berger* v. *California* (1969)

393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], the *Barber* "unavailable witness" rule was made retroactive and was specifically applied to a case in which there was an opportunity for cross-examination at the preliminary hearing when the prior testimony was taken.[3]

The import of *Barber* and other recent Supreme Court decisions was spelled out in *Johnson*: "These rulings emphasize the high court's belief in the importance of ensuring the defendant's right to conduct his cross-examination before a *contemporaneous* trier of fact, i.e., before the same trier who sits in judgment on the truth of the witness' direct testimony as it is spoken from the stand." (Italics in original.) (*People v. Johnson* (1968) *supra,* 68 Cal.2d 646, 659, 660.) ▮ We reiterate that the "contemporaneous" cross-examination which alone, in the absence of a legal showing of necessity, can be considered fully effective and constitutionally adequate is cross-examination at the *same time* as the direct testimony is given, before the *same trier* as must ultimately pass on the credibility of the witness and the weight of that testimony.

▮ In short, cross-examination neither may be *nunc pro tunc* nor may it be *tunc pro nunc.*[4]

▮ In the instant case the only direct testimony of prior statements put before the trial court charged with its evaluation in terms of defendant's guilt, came by means of the deputy district attorney's reading of the cold transcript of the preliminary hearing. That the speaker of the words therein recorded had been cross-examined on another day, before another trier of fact, and for another purpose—i.e., to establish probability, not guilt—was without practical significance to the ultimate trier of fact, and we find the process lacking in constitutional validity. Even had Porter's preliminary hearing cross-examination been read to the trial court—

---

[3] See also recent California cases which, even without the prompting of *Berger,* have applied *Barber* despite the presence of preliminary hearing cross-examination. (E.g., *People* v. *Harris* (1968) 266 Cal.App.2d 426 [72 Cal.Rptr. 423]; *People* v. *Casarez* (1968) 263 Cal.App.2d 130 [69 Cal.Rptr. 187] ["extensively cross-examined"]; cf. *People* v. *King* (1969) 269 Cal.App.2d 40 [74 Cal.Rptr. 679] [witness actually unavailable]; *Mason* v. *United States* (10th Cir. 1969) 408 F.2d 903 [testimony unavailable].)

[4] In *Berger* v. *California* (1969) *supra,* 393 U.S. 314, 315 [21 L.Ed. 2d 508, 510, 89 S.Ct. 540, 541], the high court stated that *Barber* was "foreshadowed, if not preordained" by *Pointer* v. *Texas.* Similarly, it could be said that the instant case was "foreshadowed, if not preordained" by *People* v. *Johnson.* (See *People* v. *Vinson* (1969) 268 Cal.App.2d 672 [74 Cal.Rptr. 340].)

and it was not[5]—it could have been of limited use in assessing the value of the statements. ▮ It is elementary that the role of cross-examination is not simply to elicit a bald contradiction of the witness' direct testimony, a rare occurrence at best, but to focus the attention of the trier of fact on the witness' demeanor as he relates his story and then defends his version against the immediate challenge of the opposing attorney. ▮ By cross-examination "the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." (*Mattox* v. *United States* (1894) 156 U.S. 237, 242-243 [39 L.Ed. 409, 411, 15 S.Ct. 337].) ▮ It is because demeanor—attitude and manner—is a significant factor in weighing testimonial evidence that it is axiomatic the trier of fact, before whom the witness testified and was cross-examined at trial, is the sole judge of the credibility of a witness and of the weight to be given his testimony.

Also lost in a cold reading of the preliminary transcript is the more subtle yet undeniable effect of counsel's rhetorical style, his pauses for emphasis and his variations in tone, as well as his personal rapport with the jurors, as he pursues his cross-examination. For example, Judge Leo R. Friedman has written (Essentials of Cross-Examination (Cont.Ed.Bar, 1968) p. 40) that while the lawyer "must keep control of himself . . . [t]his does not mean that the cross-examiner never should fight with a witness, raise his voice, or become angry. Forensic indignation, whether expressed physically or verbally, may produce good results in special circumstances." In addition, counsel may well conduct his cross-examination in a different manner before a committing magistrate than before a trial court or jury. Thus, states Friedman, counsel must always temper his cross-examination to the individual jurors, using their reactions as a guide to the most effective line of questioning. "The cross-examiner must remember that he is a performer and the jurors are his audience. No good performer ignores his audience, and all performances are conducted for the purpose of favorably impressing the audience." (*Id.* at p.

---

[5]With one insignificant exception, Porter's preliminary cross-examination was not read to the court. Therefore, in this instance the question of "contemporaneous" cross-examination, insofar as it concerned or even reached the ears of the ultimate trier of fact, is more academic than actual.

48.) [6] We conclude that experience demonstrates the essentiality of truly contemporaneous cross-examination.

But leaving aside for the moment questions of subjective evaluation by the trier of fact, the Supreme Court in *Barber* clearly recognized that there is a substantial difference in the nature and purposes of preliminary and trial proceedings, regardless of whether there has been cross-examination. ▉ *Barber* points out that the purpose of a preliminary hearing is not a full exploration of the merits of a cause or of the testimony of the witnesses. It is designed and adapted solely to answer the far narrower preliminary question of whether probable cause exists for a subsequent trial. ▉ The judge in preliminary proceedings is not required to be convinced of the defendant's guilt "beyond a reasonable doubt," but need only look for reasonable credibility in the charge against him.[7] ▉ *A fortiori* a witness' testimony, though the only evidence adduced, need not be convincing or credible beyond a reasonable doubt, and cross-examination which would surely impeach a witness at trial would not preclude a finding of probable cause at the preliminary stage. Even given the opportunity (see *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304]), neither prosecution nor defense is generally willing or able to fire all its guns at this early stage of the proceedings, for considerations both of time and efficacy. (Letwin, *Waiver of Objections to Former Testimony* (1967) 15 U.C.L.A. L.Rev. 118, 124.) Indeed, it is seldom that either party has had time for investigation to obtain possession of adequate information to pursue in depth direct or cross-examination.

---

[6] Furthermore, we note that under the facts of the instant case, which are far from atypical, not only was Porter's preliminary hearing cross-examination not introduced, but cross-examination at trial regarding his prior statements would have proved futile. Porter asserted that his prior statements may have been what he believed at the time, but he now could not remember the events in question. Defense counsel was thus put in the awkward position of attempting to discredit a witness who had just testified in defendant's favor. If cross-examination of a hostile witness is a delicate process, cross-examination of a friendly witness—as to testimony given at a time when he was hostile—is an unusual exercise in diplomacy and futility.

[7] Penal Code section 872 provides in relevant part: "If . . . it appears from the [preliminary] examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, the magistrate must [indorse the complaint]." "Sufficient cause" is "equivalent in meaning to 'reasonable and probable cause'" (*Perry* v. *Superior Court* (1962) 57 Cal.2d 276, 283 [19 Cal.Rptr. 1, 368 P.2d 529]), and the evidence before the committing magistrate "need not be such as would require a conviction." (*People* v. *Nagle* (1944) 25 Cal.2d 216, 222 [153 P.2d 344].)

■ Were we to equate preliminary and trial testimony one practical result might be that the preliminary hearing, designed to afford an efficient and speedy means of determining the narrow question of probable cause,[8] would tend to develop into a full-scale trial. This would invite thorough and lengthy cross-examination, with the consequent necessity of delays and continuances to bring in rebuttal and impeachment witnesses, to gather all available evidence, and to assure generally that nothing remained for later challenge. In time this result would prostitute the accepted purpose of preliminary hearings and might place an intolerable burden on the time and resources of the courts of first instance.[9]

■ Although we recognize that some of the same practical difficulties exist, nothing we say here is intended to affect or cast doubt upon the viability or constitutionality of the long-established "prior testimony" exception to the hearsay rule. (Evid. Code, §§ 1290-1292.) This exception, as *Barber* points out, adds the factor of necessity to the constitutional aspect of confrontation—which factor may, in appropriate cases, outweigh the lack of contemporary cross-examination.[10] ■ Of course, no such "necessity" exists where the witness is present to testify at trial under oath, but for some disclosed or undisclosed reason does not relate the same version of events that he told previously and that a party anticipates he will tell.[11] This is strictly a question of *credi-*

---

[8]"The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial." (*Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775].)

[9]Approximately 85 percent of felony proceedings in California superior courts originate in preliminary hearings. (Crime and Delinquency in Cal.: Report of Bureau of Criminal Statistics (1965) p. 66.) In the fiscal year of 1966-1967, this represented 64,308 felony preliminary filings in municipal courts and 7,256 in justice courts. (Annual Rep. of Judicial Council of Cal. (1968) pp. 107, 145.)

[10]Evidence Code section 1291 admits former testimony when the present defendant was a party to the hearing at which that testimony was taken "and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he had at the [present] hearing." Although preliminary hearing testimony was clearly contemplated by section 1291 (see comments thereto), the Supreme Court in *Pointer* v. *Texas* and *Barber* v. *Page* left open the question whether such prior testimony satisfies the confrontation clause of the Constitution, and we have no occasion to consider that question at this time. (But see *People* v. *King* (1969) *supra,* 269 Cal.App.2d 40, 47.)

[11]"It is one thing to use prior testimony or out-of-court declarations under well formulated hearsay exceptions when the witness is dead, incompetent, or out of the jurisdiction. It is an entirely different matter to use such testimony as substantive evidence when the witness is in court and able to testify before the very forum that is going to pass judgment

*bility,* to be dealt with, as has always been the case, by the use of immediate and contemporaneous cross-examination and the introduction of the prior inconsistent testimony or statements for purposes of *impeachment.*

 In summary, the rules that emerge from the cases and principles are these : cross-examination at trial relating to a statement or testimony given previously is constitutionally inadequate. (*Johnson.*) Cross-examination at the time of the statement, e.g., at a preliminary hearing, before a judge or agency other than the trier of fact charged with the ultimate determination of credibility and guilt, is likewise constitutionally inadequate. (*Barber.*) A combination of these two negatives obviously cannot produce a positive. Therefore, cross-examination at trial on prior testimony, together with cross-examination at the time of the statement before a different trier of fact, is not a valid substitute for constitutionally adequate confrontation. The facts in the instant case compose that combination of negatives, compelling us to conclude that defendant was denied the right of confrontation guaranteed by the Sixth Amendment to the Constitution. Both prior statements by Porter should have been excluded for any purpose other than impeachment.

We pause to note, as we did in *Johnson* (68 Cal.2d at p. 658), that the Legislature was not unmindful of the likelihood that its overly broad approval of the use of hearsay in criminal cases would have constitutional implications. Thus it provided in Evidence Code section 1204: ''A statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made, either by the defendant or by another, under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California.''

 Since the two most damaging statements of the witness Porter are inadmissible as substantive evidence, and since we find no other substantial evidence of a narcotics transaction between Porter and defendant on the date charged, the prejudicial nature of the error is manifest (see fn. 2, *ante),*

on a defendant who is on trial for his life or freedom. In the former situation, the hearsay is reasonably reliable and is presumably presented to the jury in good faith since it is the only evidence available. In the latter situation the hearsay is no longer reliable, and it is not the only evidence available.'' (*People* v. *Vinson* (1969) *supra,* 268 Cal.App.2d 672, 677.)

and the judgment of conviction must be reversed. (*Chapman v. California* (1967) *supra,* 386 U.S. 18.) We need not reach defendant's additional contentions of insufficiency of the evidence, suppression of evidence, and prejudicial misconduct.

The judgment is reversed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.