[Crim. No. 31525. Second Dist., Div. Four. Dec. 6, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JOEY ALFONSO MORGAN, Defendant and Appellant.

60

**COUNSEL**

Paul N. Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Joel F. Franklin, Edward H. Schulman and Michael S. Luros, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Andrew D. Amerson and Pamela M. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—By an information defendant and Anthony Gene Rivers were charged with the commission of robbery in violation of Penal Code section 211. It was also alleged that in the commission of the offense, defendant and Rivers used a rifle, a firearm, within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1). Defendant and Rivers were tried jointly. The jury found defendant guilty of second degree robbery but found the use-of-a-firearm allegation to be untrue.[1] Defendant was sentenced to state prison for the term prescribed by law. He has appealed from the judgment.

I

*The Factual Background*

On the morning of March 1, 1977, between 10:30 a.m. and 11 a.m., Thomas Parker received a phone call from Audrey Ward whom he had

---

[1]The jury could not reach a verdict as to Rivers. A mistrial was then declared as to him.

met previously. During this conversation, Parker arranged to meet Audrey at the Linda Motel on Washington Boulevard in Los Angeles, for the purpose of having sex with her. Parker drove his automobile to the parking lot of the motel, arriving at approximately 12 o'clock noon. Audrey was waiting in the parking lot. She introduced Elizabeth Middleton to Parker. Parker suggested to Audrey that they go some other place.

Audrey got into Parker's vehicle and they drove a short distance and parked on the street across from an apartment building. Elizabeth walked the short distance from the motel parking lot to this apartment building. Audrey and Parker waited in the vehicle for Elizabeth to obtain a key to the apartment for Audrey. Elizabeth came out of the building shortly and invited them in. Audrey, Elizabeth and Parker then went to an apartment in the building.

Parker entered a bedroom at the suggestion of Elizabeth and was immediately pushed onto the bed at gunpoint by defendant and Rivers. Parker was forced to give the two his money, amounting to approximately $46, a watch, and ring he was wearing and the keys to his vehicle. Defendant held the gun on Parker while Rivers took charge of Parker's personal property. Defendant then handed the gun to Rivers, took Parker's car keys and left. Upon defendant's return, the car keys were returned to Parker. After the two men departed, Parker saw Audrey in the living room with the gun. According to Parker, Audrey never came into the bedroom.

Parker discovered that the following items were missing from his automobile: a wallet with credit cards and an old Timex watch that he used when jogging. Parker identified defendant at a pretrial lineup and also made an in-court identification of defendant. Upon defendant's arrest, he had Parker's Timex watch in his pocket.

George Marvosh, a police officer, testified to a conversation he had with defendant after defendant had waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). Another police officer, Ted Banas, testified that, at defendant's direction, they went to an apartment at 2069 East 99th Place where defendant produced a paper bag which contained Parker's wallet which had been taken from Parker's automobile.

## II

### *Defendant's Contentions on Appeal*

Defendant advances the following contentions as grounds for reversal of the judgment: (1) that the trial court committed reversible error when it denied defendant's motion for a mistrial after the prosecution elicited testimony concerning defendant's parole status and residence in a "halfway house"; (2) that the trial court committed reversible error by permitting the introduction into evidence of a tape recording of an excused prosecution witness' out-of-court statements that did not comply with Evidence Code sections 770 and 1235; (3) that the admission into evidence of the tape recording of the excused witness' out-of-court statements constituted a violation of defendant's constitutional right of witness confrontation; and (4) that prejudicial portions of the excused witness' out-of-court statements were admitted although such portions were not inconsistent with the witness' in-court testimony.

## III

### *Defendant's Motion for a Mistrial Based Upon the Prosecution's Eliciting of Testimony Concerning Defendant's Parole Status and His Residence in a Halfway House*

On direct examination of Elizabeth Middleton, the prosecutor asked *when* she had first met defendant. She answered: "I met him at a halfway house in February." Defendant moved for a mistrial on the ground of the prejudicial impact resulting from the fact that this answer revealed his status as a "prisoner." The trial judge denied the motion but offered to admonish the jury to disregard the answer. Defendant replied that an instruction might just magnify the prejudice. Later in the trial a tape recording of Elizabeth Middleton's out-of-court statements to the police was played for the jury to hear. The statements were in answer to specific questions asked by Police Officer Hussey and were admitted by the trial judge under the prior-inconsistent-statement exception to the hearsay rule. (Evid. Code, § 1235.) Hussey asked Elizabeth specifically if defendant was living at the *halfway* house and she gave an affirmative reply. Prior to this tape being played before the jury, defendant moved to excise that portion of the tape referring to defendant's residence at the "halfway house." Defendant's motion was denied.

Police Officer George Marvosh was called by the prosecutor, as part of the prosecutor's case in chief, to testify to his conversation with defendant after defendant had waived his *Miranda* rights. The officer testified that he asked defendant to give an account of his activities during the day of March 1, the date of the Parker robbery. Marvosh testified that defendant told him he was at his mother's house; that he got up and went to see his *parole officer* and got there about noon. The officer also testified that, in response to questions about whether he was at the premises where the robbery took place on March 1, defendant denied being there.

Officer Marvosh testified that he and defendant then got into a conversation about how Marvosh had checked with defendant's parole officer who kept a log and that the log indicated that defendant had checked into the parole office well after 12 o'clock—the approximate time of the robbery. Officer Marvosh, however, did *not* testify regarding the defendant's response to the officer's accusation that defendant was not telling the truth about the hour of the day he went to the parole office. Defendant made no objection to evidence of this conversation, thus waiving any objection he might have had. (Evid. Code, § 353.)

Officer Marvosh also testified that he asked defendant where he got the watch that was in his possession when he was arrested. The defendant stated that he had had that watch *since his "release."*

Defendant made a motion for a mistrial because of the prejudice resulting from the testimony relating defendant's statements about visiting his parole officer and possessing the watch since his "release" —obviously from custody. The trial court denied the defendant's motion for a mistrial.

Defendant asserts that it was error for the trial judge to deny his motion for a mistrial because the prosecution adduced inadmissible evidence that defendant had committed a prior offense for which he had served time in prison and was on parole living in a "halfway house." That such evidence is inadmissible character-trait evidence is the normal rule. (Evid. Code, § 1101, subd. (a).) To be admissible, such evidence must have a relevancy apart from establishing defendant's propensity to commit criminal offenses. (Evid. Code, § 1101, subd. (b).)

This rule of inadmissibility existed prior to the enactment of the Evidence Code that became effective in 1967. In *People* v. *Ozuna* (1963) 213 Cal.App.2d 338, 341 [28 Cal.Rptr. 663], in which evidence was offered

that defendant had made the statement that he was an ex-convict, the court remarked: "The rule applicable here is that where evidence of the commission of another crime tends only remotely or to an insignificant degree (and, of course, where it does not tend at all) to prove a material fact in the case, proof of the same is inadmissible." (See also *People* v. *Stinson* (1963) 214 Cal.App.2d 476, 481 [29 Cal.Rptr. 695].)

The People assert that the evidence of defendant's statements to Officer Marvosh was admissible pursuant to the exception to the hearsay rule for a party's admissions provided by Evidence Code section 1220. It is argued that these statements were relevant under the principle that "[a] prior statement, *although exculpating* in form, may prove highly incriminating at the trial because, upon a showing of its falsity, it can constitute evidence of consciousness of guilt." (*People* v. *Underwood* (1964) 61 Cal.2d 113, 121 [37 Cal.Rptr. 313, 389 P.2d 937].) (Italics added.) Thus, the People point out that defendant's statements as to his whereabouts at the time the robbery was committed were in conflict with the victim's testimony.

■ The People also point out that, assuming there was error in the ruling admitting evidence that established defendant to be a parolee, defendant at trial should have requested an instruction of admonition to the jury rather than making a motion for a mistrial.

There is no doubt that, if an error occurs in erroneously admitting evidence, and it is an error that may be cured by striking the evidence and instructing the jury to disregard it, a motion for a mistrial that is made instead of a motion to strike and a request for an appropriate jury instruction, should be denied. However, if it was error for the trial court to admit evidence that defendant had committed a prior felony, it was not the kind of error that may be cured by admonition to the jury because " '[t]he natural and inevitable tendency of the tribunal . . . is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.' " (*People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr.

166, 548 P.2d 366].) In *Guerrero,* the trial court erroneously admitted against a defendant, charged with murder, evidence that he had committed an uncharged rape. In speaking about whether an admonition to the jury would cure the error, the court remarked: "No limiting instruction, however thoughtfully phrased or often repeated, could erase from the jurors' minds the picture of defendant's role in raping a 17-year-old girl and forcing her to commit oral copulation." (*Id.,* at p. 730.) Granted that the instant case is not as extreme as *Guerrero,* nevertheless, the same principle is applicable to preclude a finding by us that defendant waived any contention of error by making a motion for a mistrial rather than a motion to strike the evidence and for an admonition instruction to the jury.

We turn then to a consideration of whether the evidence of defendant's statements about his parole status was admissible evidence. The People's reliance upon the hearsay exception for a party's admission under Evidence Code section 1220 is untenable. ■ Evidence Code section 1220 can only become applicable if a party's statement is offered to prove the truth of the matter stated in the statement. All exceptions to the hearsay rule assume that the evidence would be excluded as hearsay evidence but for an applicable exception to the hearsay rule.

In the instant case, it is manifest that the prosecution was *not* offering evidence of defendant's exculpatory statements to prove their truth—that at the noon hour when the robbery was being committed, defendant was paying a visit to his parole officer far removed from the crime scene. Thus, "[n]*ot every* statement made by a party qualifies for admissibility against the party under the hearsay exception for a party's admission. The statement must be offered to prove the truth of the matter stated, either expressly or impliedly. If evidence of a party's statement is not offered against the party to prove the truth of the statement, its admissibility must be based on the circumstantial-evidence-reasoning process. In such a case, the test of relevancy must be satisfied." (Jefferson, Cal. Evidence Benchbook (1978 Supp.) Admissions and Confessions, § 3.3, p. 63.) (Italics added.)

Is evidence of defendant's statement to Officer Marvosh about visiting his *parole* officer relevant and admissible on some nonhearsay theory? The *Underwood* quotation posits one possible nonhearsay theory: "A prior statement, although exculpating in form, may prove highly incriminating at the trial because, upon a showing of its falsity, it can constitute evidence of consciousness of guilt." (*Underwood, supra,* 61

Cal.2d 113, 121.) The People argue incorrectly, however, that since defendant's statement that he was at his parole officer's office at noon conflicts with the victim's testimony that defendant was at an apartment at that hour robbing him at gunpoint, the statement becomes admissible under the *Underwood* analysis.

■ The *Underwood* rationale of admissibility of a defendant's *exculpatory* statement on a *nonhearsay* theory is not applicable to the situation presented in the case at bench. In *Underwood,* an exculpatory statement of defendant was shown to be false by reason of *defendant's own testimony.* In such a situation, it is logical to conclude that the falsity of the defendant's extrajudicial statement, established by defendant's own testimony, leads to a reasonable inference of defendant's state of mind—a consciousness of guilt—and thence to a second inference—that defendant had acted in conformity with his state of mind and committed the offense charged. But here, the fact that defendant's exculpatory statement conflicts with testimony from a *prosecution* witness, cannot be said to lead reasonably to an inference that it shows defendant's state of mind of a consciousness of guilt. Any such inference would amount to speculation of the rankest sort. *Nonreasonable* inferences sought to be drawn from evidence makes such evidence inadmissible as being *irrelevant,* since evidence, to be relevant, is limited to evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

■ As to whether the trial court's error in admitting evidence of defendant's exculpatory statements and other evidence revealing that defendant was a convicted felon and denying defendant's motion for a mistrial constitutes reversible error will be considered subsequently in this opinion.

Defendant also contends that the prosecutor deliberately and knowingly introduced the evidence of defendant's prior criminal conduct; that it therefore constituted prosecutorial misconduct giving rise to a violation of defendant's due process rights. ■ "Prosecutorial misconduct implies the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*People* v. *Strickland* (1974) 11 Cal.3d 946, 955 [114 Cal.Rptr. 632, 523 P.2d 672].) The absence of good faith is an essential ingredient of the concept of misconduct. (*People* v. *Chojnacky* (1973) 8 Cal.3d 759, 766 [106 Cal.Rptr. 106, 505 P.2d 530].) But we do not interpret the record as establishing bad faith on the part of the prosecutor in introducing the inadmissible character-trait evidence.

# IV

■ *What Constitutes Sufficient Examination of a
Witness About Prior Inconsistent Statements
to Satisfy Evidence Code Section 770 and Make
Admissible Extrinsic Evidence of Such Prior
Statements Under Evidence Code Section 1235?*

Elizabeth Middleton, called as a witness by the prosecutor, testified on direct examination that she was acquainted with both Rivers and defendant for a short time prior to March 1, the date of the robbery; that she first met defendant at a halfway house where he was living. She said that, on March 1, she, Audrey Ward and Parker went from the motel parking lot to an apartment on 20th Street and that Audrey and Parker went into the bedroom.

In response to the prosecutor's questions, she then denied seeing a gun at any time that day and denied seeing either defendant or Rivers at all on March 1. In answer to further questions on direct examination, she admitted that a few days prior to her taking the witness stand, she had been questioned in the prosecutor's office with two police officers present and, on that occasion, had said that, at the apartment on March 1, defendant and Rivers were in the bedroom with Parker, the victim, and defendant had a rifle and she heard Parker asking for a return of his property; that she had also said in the prosecutor's office that she saw defendant go out of the apartment with the keys to Parker's car and search Parker's car, returning with a wallet and credit cards which defendant and Rivers appeared to examine; that shortly thereafter Parker's keys were returned to him. Elizabeth then testified that the matters she stated in the prosecutor's office were not true but were bits of information she had picked up from the police and the prosecutor.

In response to the prosecutor's questions, Elizabeth testified that, shortly after the conversation in the prosecutor's office, she went to the Wilshire police station with the two police officers and had a conversation with them that was tape recorded and that it was basically the same things she had said in the prosecutor's office. Elizabeth was then excused by the trial court from giving further testimony.

Subsequently, over defendant's objection, the trial court permitted the tape recording made by the two police officers of their conversation with Elizabeth to be played before the jury. The defendant asserts that the tape recording was inadmissible evidence because the foundational requirements of Evidence Code section 770 were not satisfied. Under this section, "extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless: [¶] (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or [¶] (b) The witness has not been excused from giving further testimony in the action." (Evid. Code, § 770.)

Most of the statements of Elizabeth contained in the tape recording were inconsistent with her testimony. But it is the position of the defendant that, since Elizabeth had been excused as a witness (see Evid. Code, § 770, subd. (b)), the foundation required by Evidence Code section 770, subdivision (a), could only be satisfied by the prosecutor's asking Elizabeth while she was on the witness stand whether she made the specific statements contained in the tape recording by calling to her attention each specific statement that was contained in the tape recording. Defendant relies on *People* v. *Strickland* (1974) 11 Cal.3d 946 [114 Cal.Rptr. 632, 523 P.2d 672], in which a witness was questioned on direct examination as to whether he had made certain specific statements in a tape-recorded conversation before the tape recording was offered by the prosecution to be played before the jury. The *Strickland* court held that the prosecution's interrogation "satisfied the Evidence Code section 770 requirement that a witness, while testifying, be given an opportunity to explain or deny past inconsistent statements." (*Id.,* at p. 954.)

But we do not read *Strickland* as holding that Evidence Code section 770, subdivision (a), can *only* be satisfied by the type of questioning that occurred there. In the instant case, the prosecutor asked Elizabeth if she had not made specific statements in an earlier conversation in the prosecutor's office. With respect to the tape-recorded statements made subsequently in the police station, the prosecutor asked Elizabeth whether she had such a conversation in the police station and were not her statements about the same as she had made in the earlier conversation in the prosecutor's office. We conclude that the foundation requirements of Evidence Code section 770, subdivision (a), were satisfied so as to make admissible, under Evidence Code section 1235, the second, tape-recorded conversation. Having been questioned in detail about the

first conversation, and having been asked whether the second, tape-recorded conversation, was the same as the first, the witness Elizabeth was given adequate opportunity to explain or deny making the tape-recorded statements within the meaning of Evidence Code section 770, subdivision (a).

Since we hold that there was no violation of Evidence Code section 770 in the trial court's ruling permitting the prosecutor to play before the jury the tape recording of witness Elizabeth's conversation with the police officers, we reject defendant's contention that the prosecutor committed misconduct of constitutional proportions in introducing the tape recording after permitting Elizabeth to be excused as a witness.

V

*The Claim That the Admission Into Evidence of Extrinsic Evidence of an Excused Witness' Out-of-court Tape-recorded Statements to Prove Their Truth, Pursuant to Evidence Code Section 1235, Violated Defendant's Constitutional Right of Witness Confrontation*

Defendant advances two theories as to why the extrinsic evidence in the form of the tape recording of Elizabeth Middleton's conversation with the police; admitted in evidence pursuant to the prior-inconsistent-statement exception to the hearsay rule authorized by Evidence Code section 1235, violated his constitutional witness-confrontation rights.

First, defendant claims that the witness' absence at the time the evidence of the prior inconsistent statements were introduced into evidence prevented defendant from being able to confront the witness and to conduct a cross-examination of the witness. The cases of *Davis* v. *Alaska* (1974) 415 U.S. 308 [39 L.Ed.2d 347, 94 S.Ct. 1105]; *Chambers* v. *Mississippi* (1973) 410 U.S. 284 [35 L.Ed.2d 297, 93 S.Ct. 1038]; *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748]; *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074]; *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; and *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], cited by defendant as authority for his position, are simply not in point. The witness, Elizabeth Middleton, was before the trier of fact when she was

questioned about her prior statements. We know of no authority, state or federal, that holds that the constitutional right of witness confrontation requires that a witness be available for cross-examination at the time the extrinsic evidence of the witness' prior inconsistent statements is introduced.

In *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], the United States Supreme Court held that the right of witness confrontation under the federal Constitution did not preclude the admissibility of extrinsic evidence of a witness' prior inconsistent statements that are offered for their truth. The *California* v. *Green* case held that the right to confront the witness and inquire about the making of the prior statements *before* extrinsic evidence of such statements is introduced satisfied the confrontation requirement.

Second, defendant advances the contention that Evidence Code section 1235 violates the right of witness confrontation contained in article I, section 15, of the California Constitution. It is a matter of decisional law history that, in *People* v. *Johnson* (1968) 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111], and in *People* v. *Green* (1969) 70 Cal.2d 654 [75 Cal.Rptr. 782, 451 P.2d 422], the California Supreme Court held that Evidence Code section 1235 violated a defendant's right of witness confrontation under the *federal* Constitution, but that these cases were overruled by the United States Supreme Court in *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930].

There can be no doubt that, from a defendant's standpoint, the most effective right of confrontation of a witness occurs when (1) a witness is under oath, (2) he is subject to cross-examination when he testifies about *facts observed* and (3) his demeanor can be observed by the fact finder who must determine his credibility. ■ But certainly neither the federal nor the state constitutional right of witness confrontation guarantees the *most effective* right of a defendant to be confronted by witnesses against him. (See *California* v. *Green, supra.*) Such a rule of constitutional law would prohibit the introduction of all hearsay evidence and abolish all of the exceptions to the hearsay rule. *California* v. *Green* made it clear that, insofar as the federal Constitution is concerned, in guaranteeing the right of witness confrontation, the states were not precluded from creating new exceptions to the hearsay rule, in addition to using those exceptions already in existence.

■ The major thrust of defendant's argument regarding the constitutional issue of witness confrontation is directed to the position that the California Constitution's provisions guaranteeing witness-confrontation rights to a defendant (Cal. Const., art. I, § 15), added to the California Constitution in 1974, should be interpreted in a broader fashion than the comparable federal provisions, with the result that Evidence Code section 1235 should be declared invalid under provisions of the California Constitution.

■ It is well settled that California courts may interpret provisions of the California Constitution that are identical with provisions in the federal Constitution by a different standard to give defendants greater rights than are accorded by the federal provisions. (*People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237].) Article I, section 24, of the California Constitution, added in 1974, provides: "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution."

■ It is suggested that, in view of the addition in 1974, of article I, section 15, to the California Constitution, the view espoused by the California Supreme Court in 1968 in *People* v. *Johnson,* 68 Cal.2d 646, and in 1970 in *People* v. *Green,* 70 Cal.2d 654, both *supra,* that Evidence Code section 1235, in creating a new hearsay exception for a witness' prior inconsistent statements, was violative of the federal constitutional provisions guaranteeing witness-confrontation rights, should now be reexamined and Evidence Code section 1235 be declared violative of California's constitutional provisions.

But in view of the United States Supreme Court's decision in *California* v. *Green,* if Evidence Code section 1235 is to be declared violative of provisions of the California Constitution, either in whole or in part, it should be the responsibility of the California Supreme Court and not that of an intermediate Court of Appeal. Because states may interpret state constitutional provisions that are identical with federal constitutional provisions in a different manner than the United States Supreme Court has interpreted the federal constitutional provisions does not lead to a conclusion of what California's public policy should be in this matter —either in general or in particular instances. (See *People* v. *Contreras* (1976) 57 Cal.App.3d 816, 820 [129 Cal.Rptr. 397]; *People* v. *Browning* (1975) 45 Cal.App.3d 125, 143 [119 Cal.Rptr. 420] (overruled on other grounds in *People* v. *Williams* (1976) 16 Cal.3d 663, 669 [128 Cal.Rptr. 888, 547 P.2d 1000].)

VI

**Portions of a Witness' Prior Conversation With
the Police That Are Inconsistent With the Witness'
Testimony Do Not Make Admissible Other Portions
of the Witness' Conversation That Are Not
Inconsistent With Such Testimony**

Defendant takes issue with the trial judge's ruling admitting, under the prior-inconsistent statement exception to the hearsay rule, practically the entire tape-recorded conversation that Elizabeth Middleton had with two police officers. Certain portions of Elizabeth's statements, made in this conversation, set forth that defendant was at the scene of the robbery on March 1, and had pointed a rifle at the victim and had taken from the victim his car keys and had taken from the victim's car a wallet and credit cards. These statements are clearly inconsistent with Elizabeth's testimony denying that she had seen defendant at all on the day of March 1.

Defendant contends that it was error, however, for the trial judge to admit other portions of Elizabeth's statements contained in the tape-recorded conversation in which she stated (1) that she had known defendant for about three weeks prior to March 1, the date of the robbery, and that during this period defendant was living at a "halfway house;" and (2) that she had seen defendant and Rivers drive away from the premises after the robbery in a car that she, Audrey, Rivers and defendant were in in Santa Monica at the Synanon; and (3) that about a week after the robbery she heard defendant and Rivers having a disagreement over how they would split between them the items of property taken in the Parker robbery.

Elizabeth had given no testimony, either expressly or impliedly, with which the above three portions of her statements were inconsistent. These three portions of her prior recorded statements were inadmissible hearsay and should have been excised from the tape recording played for the jury to hear. The hearsay exception set forth in Evidence Code section 1235 for prior inconsistent statements of a witness does *not* make admissible any prior statements of a witness that are *not* inconsistent with the witness' testimony, even though such *noninconsistent* statements are made at the same time and as a part of the same conversation in which the inconsistent statements are made. "There is no justification for permitting a witness' prior inconsistent statement to make admissible *other* prior *statements* of the witness, even though made at the same time, that are *not*

inconsistent with the witness' testimony and possess no more reliability than any other inadmissible hearsay statements." (Jefferson, Cal. Evidence Benchbook (1978 Supp.) § 10.1, p. 128.) (Italics in original.)

█ In the instant case the noninconsistent prior statements of Elizabeth relating defendant's parole status because of residence in a "halfway house," his visit to Synanon, a drug rehabilitation project, and his disagreement with Rivers over dividing the spoils of the robbery, are obviously of a prejudicial nature.

The focal point of our inquiry, however, must be whether the errors we have discussed herein are such as to mandate a reversal of defendant's conviction. We conclude that they do not. The evidence against defendant must be categorized as being almost overwhelming. In addition to defendant's identification by the victim, a watch belonging to the victim was found on defendant's person upon his arrest, and defendant produced for the police the victim's wallet which defendant had secreted after the robbery. Defendant offered no defense. Had the errors discussed herein not occurred, it is not within the realm of probability that defendant could have secured a more favorable result. (See *People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 1, 1979.