JOHN NEIL LEVI, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 11384

November 9, 1979                    602 P.2d 189

*Jeffrey D. Sobel,* of Las Vegas, for Appellant.

*Robert J. Miller,* District Attorney, *H. Douglas Clark,* and *James N. Tufteland,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

A jury convicted Levi of child abuse resulting in substantial bodily harm.[1] The legislature has defined substantial bodily harm for the purposes of criminal penalty as meaning (1) bodily injury which creates a substantial risk of death, or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ, or (2) prolonged physical pain. NRS 193.015.

In this case evidence was received from which the jury properly could conclude that Levi willfully held his eight-year-old son over burning papers causing first and second degree burns to the boy's stomach and hand. The primary claim of error is that the state failed to prove that the burns constituted substantial bodily harm. Accordingly, we are asked to modify the felony conviction to that of a gross misdemeanor. Other errors also are assigned and will be considered.

---

[1]NRS 200.508(2): "A person who violates any provision of subsection 1, if substantial bodily or mental harm results to the child, shall be punished by imprisonment in the state prison for not less than 1 year nor more than 20 years."

1. Although it is true that the burns to the boy's stomach and hand did not create a substantial risk of death, protracted loss or impairment of a bodily member or organ, or prolonged physical pain, there was sufficient evidence offered to enable the jury to find a serious permanent disfigurement. Indeed, a doctor testified that the disfigurement was permanent, and could be cosmetically serious, if not functionally so. In our view, the phrase, "serious permanent disfigurement," includes cosmetic disfigurement as well as an injury that is functionally disabling. The child did not want the jurors to see his burned stomach because it was different. The damage apparently was serious in his mind. He was permanently scarred because of pigment loss. It was the jury's province to determine whether the harm was serious as well as permanent. Gibson v. State, 95 Nev. 99, 590 P.2d 158 (1979). We perceive no error in its determination.

2. During trial, Darin, the eight-year-old son who was burned, and Michele, his nine-year-old sister, repudiated statements each had given at the preliminary examination to the effect that their father had lit a piece of paper in the kitchen sink and held Darin over the flames. Such prior inconsistent statements were received as substantive evidence pursuant to NRS 51.035(2)(d).[2] It is asserted that the reception of such statements as evidence of the truth of the matters stated therein—as opposed to admission for impeachment only—is not constitutionally adequate.

The same contention was tendered to the United States Supreme Court and, by that Court, rejected. California v. Green, 399 U.S. 149 (1970). The California Supreme Court had ruled that the confrontation clause precluded the introduction at trial of prior inconsistent statements made at a preliminary hearing, under oath by an adequately counseled defendant. People v. Green, 451 P.2d 422 (Cal. 1969). In reversing that determination the High Court held that the confrontation clause is not violated as long as the declarant is testifying as a witness at trial and is subject to full cross-examination. Moreover, the Court observed that where the prior statement was made under circumstances not significantly different from an

[2]NRS 51.035(2)(d) provides:

" 'Hearsay' means a statement offered in evidence to prove the truth of the matter asserted unless:

"2. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"(d) A transcript of testimony given under oath at a trial or hearing or before a grand jury, . . . ."

actual trial, the statement is admissible wholly apart from the question whether the defendant had an effective opportunity for confrontation at the subsequent trial. We followed this observation in Sparkman v. State, 95 Nev. 76, 590 P.2d 151 (1979).

In this case the children were under oath and subject to cross-examination by defendant's counsel at the preliminary hearing and at trial. The prior inconsistent statements were admissible for all purposes pursuant to NRS 51.035.

3.   Levi admitted to police officers that he had burned his son. Because such admissions were made, he now contends that the trial judge, on his own motion, was obliged to instruct the jury to disregard such admissions should they disbelieve the children's prior statements.

Only in exceptional circumstances need the trial court, sua sponte, give such a limiting instruction. For example, in Champion v. State, 87 Nev. 542, 490 P.2d 1056 (1971), the state conceded that a cautionary instruction concerning an addict-informer's testimony was central to the cause, and we found prejudice where no such instruction was given. We do not consider the instruction which Levi now insists should have been given to fall within the class that must be given sua sponte by the court. Gebert v. State, 85 Nev. 331, 454 P.2d 897 (1969). Indeed, supporting authority for his contention is not submitted.

Affirmed.

GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.

MOWBRAY, C. J., dissenting:

The majority, by invoking the principle of "substantial evidence", places its imprimatur upon what I can characterize only as a gross miscarriage of justice. In its quest for a quantum of evidence to support the jury's finding that appellant had committed child abuse resulting in serious permanent disfigurement, the majority loses sight of "one of the most basic concepts of due process of the law," that a person may not be punished without evidence to support each and every element of the crime with which he is charged. Shuttlesworth v. City of Birmingham, 382 U.S. 87, 94–95 (1965); Thompson v. City of Louisville, 362 U.S. 199, 204 and 206 (1960).

In affirming the instant jury verdict, the majority declares that the record contains substantial evidence supporting a finding of permanent disfigurement and that, based upon this evidence, the jury could reasonably conclude that the permanent

disfigurement was serious. That substantial evidence, according to the majority, consisted of a doctor's testimony that "the disfigurement was permanent." *Ante* at 748. The record, however, belies the existence of any such statement or of any other evidence of permanent disfigurement. And, after all, it is the record with which we are concerned on appeal. *See, e.g.,* A Minor v. State, 85 Nev. 323, 454 P.2d 895 (1969); State v. Ah Mook, 12 Nev. 369 (1877). To the record I now turn.

At trial, the State called Dr. Grillot, one of the victim's examining doctors, and apparently the doctor referred to by the majority as a medical expert. Dr. Grillot testified that he had examined the child's burns on one occasion a few days after the burning incident and, at that time, he had not formed any opinion as to whether the child had incurred any permanent disfigurement. Moreover, Dr. Grillot added that even if he were to examine the child's burns at trial, he would not be able to give an opinion as to the permanent nature of any injury. Though the doctor did note that black children scar more readily than other children, because of possible pigment loss, he emphasized that he had not noticed any damage to the victim's pigment. No evidence was offered at trial to indicate or to imply that the child had, in fact, suffered a pigment loss or had incurred permanent scarring, discoloration, or disfigurement of any kind. Nor is there any indication, contrary to respondent's contention, that the jury was presented with a view of the child's stomach.[1] The majority, however, reads Dr. Grillot's exculpatory testimony as a statement that the child was permanently disfigured. With this conclusion, I cannot agree.

While I would agree with the majority that it is the jury's function to determine whether any permanent disfigurement is serious, Gibson v. State, 95 Nev. 99, 590 P.2d 158 (1979), I note, as well, that the jury must be presented with some evidence upon which it can base its determination, Shuttlesworth v. City of Birmingham, *supra;* Thompson v. City of Louisville, *supra.* While I recognize that it is not the function of this court, on appeal, to reassess the credibility of the witnesses or the weight to be given to the evidence, Wheeler v. State, 91 Nev. 119, 531 P.2d 1358 (1975), I add, with additional emphasis, that it is not this court's function to create such evidence, *ex nihilo,* when no such evidence appears in the record, A Minor v. State, *supra;* State v. Ah Mook, *supra.* Since the record before us does not contain one shred of evidence to support a finding of serious, permanent disfigurement, due process demands that the instant jury verdict be reversed.

---

[1]The record reflects that both the jurors and the prosecutor informed the trial judge that they were unable to see the boy's stomach.

In addition, I cannot agree with the majority's holding that a trial court need not give, on its own motion, a cautionary instruction regarding a defendant's oral admissions to a third party. Appellant calls our attention to People v. Beagle, 492 P.2d 1 (Cal. 1972), which explicitly holds that such an instruction must be given *sua sponte* by the trial court. 492 P.2d at 9–10. The overwhelming majority of jurisdictions which have considered this issue is in accord. *See* People v. Bemis, 202 P.2d 82 (Cal. 1949) (and cases cited therein); Stork v. State, 559 P.2d 99 (Alaska 1977); State v. McGilbry, 392 P.2d 297 (Ariz. 1964); *cf.* State v. Bouse, 264 P.2d 800 (Or. 1953) (holding that it was error for the trial judge not to instruct, *sua sponte,* on the reasons behind the cautionary instruction).

The rationale underlying these decisions is simply that verbal admissions should be received by a jury with caution and subjected to careful scrutiny since no other class of evidence is more subject to error or abuse:

> Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by the omission or the changing of words, to convey a false impression of the language used. No other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the party himself.

People v. Bemis, 202 P.2d at 84. I can see no reason why this rationale does not apply to the damaging admissions, virtually immune from challenge, offered against appellant in the present case.

The State's case against appellant was not a strong one. The corpus delicti was established by the arguably inconsistent prior statements made by two of appellant's children. This insubstantial corpus was buttressed by appellant's third party admissions. Had the jury been properly instructed to view those admissions with caution, a more favorable verdict to appellant might very likely have been returned. *See, e.g.,* Stork v. State, 559 P.2d at 103; People v. Lopez, 120 Cal.Rptr. 562 (Ct.App. 1975).

Since I believe that the jury was not properly instructed in the present case and that the judgment of the district court, unsupported by any evidence, deprived appellant of due process, I would reverse the judgment and remand the case for a new trial. Accordingly, I respectfully dissent.