Filed 7/24/13  P. v. Shaffer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055442 |
| v. | (Super.Ct.No. SWF10001444) |
| RONALD ALLEN SHAFFER, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Heidi T. Salerno, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

A jury found defendant Ronald Allen Shaffer guilty as charged of corporal injury, kidnapping, and making criminal threats against his girlfriend, Jane Doe. (Pen. Code, §§ 273.5, subd. (a), 207, subd. (a), 422.)[1] Defendant admitted having two prison priors, a prior strike, and a prior serious felony conviction. (§§ 667.5, subd. (b), 667, subds. (a), (c), (e)(1).) The court denied defendant's *Romero*[2] motion and sentenced him to 18 years 4 months in prison.

Defendant claims the court erroneously denied his motion for mistrial based on a witness's reference to his having been in jail; erroneously admitted evidence of his prior acts of domestic violence against his former wife Demetrya; and abused its discretion in denying his *Romero* motion. We find each of these claims without merit.

Defendant also claims, and the People agree, that the court erroneously imposed a *concurrent* one-year term for one of his two prison priors. Defendant claims the enhancement must be stricken because the record shows the court did not intend for him to serve any sentence on it. We agree that the court should have either stricken the enhancement or imposed a one-year *consecutive* sentence on it, but as the People point out, the proper remedy is to remand for resentencing because, contrary to defendant's claim, the record does not unequivocally show the court would have stricken the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

2

enhancement had it known its only options were to strike it or impose a consecutive one-year sentence on it.

Lastly, defendant claims the court abused its discretion in denying his *Romero* motion to strike his 1998 prior strike for robbery. We find no abuse of discretion. We remand for resentencing on or striking of one of defendant's two prison prior enhancements, and affirm the judgment in all other respects.

## II.  FACTUAL BACKGROUND

Though the parties' briefs on appeal include detailed recitations of the facts of the case, a less detailed recitation of the facts is necessary for a full understanding and our consideration of the issues raised on appeal. Thus we do not reiterate all of the detailed factual background included in the parties' briefs.

A. *Prosecution Evidence*

1. <u>Background</u>

On July 2, 2010, defendant lived in Lake Elsinore with his girlfriend Doe, her two children, her brother Michael, her mother Esperanza, and Esperanza's roommate. Defendant is six feet three inches tall and weighs 245 pounds. Doe is 5 feet 11 inches tall.

That morning, defendant and Doe had a fight because defendant wanted to spend money on computer parts. Doe did not want him to do so because he was unemployed and only she was earning an income. When she arrived home from work at 5:00 p.m.,

Doe saw a computer, became angry, and the fight continued. Defendant was drinking whiskey and beer, refused to make dinner, and told Doe to make dinner.

After dinner, defendant and Doe drove to the home of their friend Lori Law, who was not yet home. That day, defendant and Law had called each other several times. Outside Law's house, defendant spoke to Law on the telephone, told her he was in his truck and Doe was inside her house, and he was upset because Doe was driving him crazy.

Law arrived home and found Doe inside her house, upset, frightened, agitated, and nervous. Doe told Law she and defendant were fighting and that she was afraid, and asked Law to take her home. Law agreed to take Doe home after she got her dog back inside the house. When she returned 10 minutes later, defendant was inside her house and Doe said she was leaving with him, even though she still appeared nervous and frightened.[3]

After leaving Law's house, defendant drove to a park with Doe. There, he began hitting Doe after she said something about his sister not writing to him. He held Doe's hair with one hand, punched her in her head and "every where" with his other hand, then began choking her with his left hand. He continued hitting her in the back of the head. When he finally stopped, he told Doe he was going to take her to the mountains, kill her, and dispose of her body where it would not be found because he had "nothing to lose" and "nothing in this world." Doe kept telling defendant her children needed her, and

---

[3] Earlier, Doe called Esperanza and asked Esperanza to pick her up.

defendant kept replying, "fuck your kids." He also told her to "shut the fuck up" and called her awful names.

When they parked at the park, Doe wanted to get out of the car to find her glasses, and defendant told her, "if you take off . . . I will find you . . . I will run you over or I'll beat you in front of everybody" and "nobody will help [you]." When defendant drove away from the park, he left Doe's glasses on the top of his truck where Doe threw them. While driving away from the park, defendant continued to threaten Doe, telling her, "I know there's somewhere up here that I can beat the shit out of you and leave you" and "you've never been beaten like I'm gonna beat you." Defendant then drove up a dark road and continued talking about killing Doe, while Doe begged him to rent a room so they could talk.

At that point, defendant turned around and stopped to get gas. At the gas station, Esperanza began texting and calling, asking whether they were okay. Defendant calmed down and said he was going to take them home, but he was still angry. After leaving the gas station, he drove erratically and talked about killing both himself and Doe. When they got home, he told Esperanza that he and Doe had had rough sex to explain why Doe had marks on her.

The next morning, on July 3, defendant drove Doe to work. While at work, Doe called Law and asked Law to pick her up from work. Law took Doe to Law's house, and Esperanza met them there. Doe told Law and Esperanza how, the night before, defendant beat, choked, and threatened to kill her. Law saw that Doe had a swollen lip, hand or

5

finger marks on her neck, scratches on her neck and chest, and large bruises on her forearms.

Law encouraged Doe to call the police, and took Doe and Esperanza to the police station. There, Deputy Chad Duhamel took a recorded statement from Doe, and the recording was played for the jury. Deputy Duhamel testified that Doe appeared very fearful while recounting the events of the previous night. Her hands shook the entire time. She told the deputy how defendant beat, choked, kidnapped, and threatened to kill her, and said she was "deathly scared" of defendant. Deputy Duhamel then went to defendant's home and arrested him. Doe and Esperanza then met with Doe's sister Muniz, and Doe again recounted how defendant beat, choked, kidnapped, and threatened to kill her.

The next day, at a July 4 gathering, defendant's sister Shelley told defendant's ex-wife Demetrya that defendant had been "violent" with Doe. Later that day, Demetrya contacted Doe and told her defendant had abused her and recently asked her for sex, which she declined.

A few days after Demetrya called her on July 4, Doe spoke to defendant on the telephone when he was in jail, and asked him to tell her "whatever [she needed] to say" to help him fight the charges. In subsequent jailhouse telephone conversations with defendant, Doe agreed she would claim defendant slapped her in the face because she was angry and not taking her medication, and that her other injuries occurred when they had rough sex.

6

In testifying at trial in July 2011, Doe recanted the story she told Deputy Duhamel, Law, Esperanza, and Muniz on July 2 and 3, 2010. She claimed that after she and defendant left Law's house on the night of July 2, they went to the park, argued about the computer, talked about their relationship, and had sex in the backseat of the truck. On their way home, Doe became angry again and grabbed defendant's keys. In response, defendant slapped Doe in the face, causing injury to her mouth and neck. When they got home, defendant spoke to Esperanza and went to bed, where he and Doe had sex again.

At trial, Doe claimed she told Law defendant beat, kidnapped, and threatened her because she was angry about the computer and the fact that Demetrya called her on July 2 and told her defendant asked her for sex. She also claimed that when she was at Law's house on July 2, she told Law her lip was swollen because defendant smacked her in the mouth, and that she and defendant had rough sex that night. She explained that she and defendant often had rough sex, would put their hands around each other's throats, and had done so on the night of July 2 when they had sex before defendant slapped her in the face. She also explained that, in April 2010, she discovered she was pregnant and stopped taking her medication for depression.[4] When not taking her medication, she had no patience and would "snap." She "snapped" when she took defendant's keys.

Doe also claimed that on the morning of July 3 when she was at work, Demetrya called and said defendant had asked her for sex. This made Doe angry, so she contacted

---

[4] On July 2 and 3, 2010, Doe believed she had suffered a miscarriage and was not pregnant, but she later discovered she was still pregnant.

Law and Esperanza, had them take her to the police station, and made the police report in order to get back at defendant for cheating on her. She admitted she was loyal to defendant and would help him. She later gave birth to defendant's baby, then married him on April 1, 2011. She did not want to see him prosecuted because the child needed a father.

    2. Evidence of Defendant's Prior Acts of Domestic Violence

A month or two before the July 2 and 3, 2010 incident, defendant held a knife to Doe's throat and threatened to kill her. On another prior occasion, defendant hit Doe in the forehead with the palm of his hand, causing her to stumble backwards, hit a wall, and see stars.

Demetrya testified defendant was physically violent toward her during the time they were together from 1995 to 2002. In 1996, he backhanded her in the face. Then, when she was seven to eight months pregnant with her eldest daughter, defendant pulled her hair, forced her to the floor, and kicked her in her back while he was wearing boots. During arguments, he would call her a "bitch" and "worthless."

In 2002, defendant got a belt to spank his and Demetrya's six-year-old daughter because the girl would not eat. He swung the belt, hitting the girl in the check while Demetrya tried to stop him. Later in 2002, when Demetrya was pregnant with her youngest son, defendant slapped her in the face in front of her then seven-year-old son. He and Demetrya then went into the bedroom where he grabbed Demetrya by the neck, put her in a "choker hold," and yelled, "Do you like when I do this to you[?]" Defendant

8

was drinking hard alcohol each time he abused Demetrya, and she never reported him to the police because she feared what he might do to her.

      3. <u>Expert Testimony on Domestic Violence</u>

Detective Christian Vaughan, a domestic violence expert, testified regarding the cycle of domestic violence. Many domestic violence victims will recant their reports of abuse, minimize the abuse, or come up with alternative explanations of the abuse that do not sound bad. The victims will often stay with the abuser because they do not want their children to grow up without their father, and will claim they lied about the abuse.

B. *Defense Evidence*

Doe testified she never told Law about any prior abuse by defendant. Doe admitted Demetrya told her about defendant abusing her after Doe reported defendant's abuse to the police on July 3, not before.

C. *Rebuttal*

Demetrya testified July 4 was the day Muniz told her defendant physically abused Doe. That same day, Doe sent Demetrya text messages, asking whether defendant had hit her. Demetrya responded by telling Doe about defendant's past abuses of her, and told Doe to call her if she ever needed to talk. They then spoke on the telephone, Doe cried, and told Demetrya defendant had hit her.

## III. DISCUSSION

A. *The Motion for Mistrial Was Properly Denied*

At trial, the prosecutor asked Doe's sister Muniz whether Doe had ever told her "something physical" had ever happened between Doe and defendant, before the July 2 and 3, 2010, incident. In response, Muniz testified: "She said . . . it started a couple months after he got out of jail in December the first time he hit her." Defense counsel objected, and a discussion was held at sidebar. The court then struck Muniz's "last comment" and instructed the jury to disregard it. The court said: "When I strike a comment, you're to disregard it and treat it as if you never heard it."

Later that day, defense counsel moved for a mistrial based on Muniz's reference to defendant having been in jail. The prosecutor noted the comment was made in passing, the jury did not hear why defendant was in jail, and argued that the instruction to disregard the comment was sufficient to cure any prejudice. The court took the matter under submission and later denied the motion. The court characterized the comment as "de minimus," and said there was no reason to believe the jury would not follow the instruction to disregard the comment. Defense counsel asked the court not to further instruct the jury on the comment so as not to draw attention to it, and no further instruction was given.

Defendant claims the court abused its discretion and deprived him of a fair trial in denying his motion for mistrial based on Muniz's comment that he had been in jail. We

10

find no abuse of discretion.  The court's admonition to disregard the comment was sufficient to cure any prejudice.

A motion for mistrial should be granted only when a party's chances of receiving a fair trial have been irreparably damaged.  (*People v. Ayala* (2000) 23 Cal.4th 225, 283.) In other words, "'[a] mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction.  [Citation.]  Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.  [Citation.]'"  (*People v. Wallace* (2008) 44 Cal.4th 1032, 1068.)  We review the court's ruling on a motion for mistrial for an abuse of discretion.  (*Ibid.*)

The motion here was properly denied.  Although, as defendant points out, "there is little doubt [that] exposing a jury to a defendant's prior criminality *presents the possibility* of prejudicing a defendant's case and rendering suspect the outcome of the trial" (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580, italics added), Muniz's reference to defendant having been in jail was brief, was not mentioned again during trial, and was unrelated to any of the other evidence presented at trial.  The comment was also not particularly inflammatory given that the jury did not hear why or for how long defendant had been in jail, or that he had been convicted of any crime.  In these circumstances, there is no reason to believe the jury did not follow the court's instruction to disregard the comment.  (See *People v. Pearson* (2013) 56 Cal.4th 393, 414 [courts presume jurors understand and follow instructions].)

11

Additionally, any error in denying the motion was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Harris, supra,* 22 Cal.App.4th at p. 1581.) It is not reasonably probable that Muniz's reference to defendant having been in jail affected any of the verdicts. Again, the jury never heard why defendant was in jail or that he had been convicted of any crime. Moreover, the evidence that defendant inflicted corporal injury on Doe, kidnapped her, and made criminal threats against her was supported by the testimony of numerous witnesses, including Law, Muniz, and Deputy Duhamel, and Doe's statements to these witnesses on and shortly after July 2 and 3, 2010.

B. *The Uncharged Prior Acts Evidence Involving Demetrya Was Properly Admitted*

Before trial, the court ruled the prosecution could present evidence of defendant's prior acts of domestic violence against his former wife Demetrya in 1996 and in 2002 to show defendant had a propensity to physically abuse his partners. (Evid. Code, §§ 1109.) Defendant claims the admission of the evidence was an abuse of discretion, both because the evidence was more prejudicial than probative (Evid. Code, § 352) and because the 1996 act, in which defendant slapped Demetrya in the face, occurred more than 10 years before the charged acts were committed in July 2010 (Evid. Code, § 1109, subd. (e)). We find no abuse of discretion or error in the admission of any of the evidence.

We begin with the Evidence Code section 352 question. In criminal prosecutions for crimes involving domestic violence, Evidence Code section 1109 allows the admission of evidence of uncharged acts of domestic violence to show the defendant had a propensity to commit such acts—provided the prior act evidence is not inadmissible

12

under Evidence Code section 352.[5]  (Evid. Code, § 1109, subd. (a); *People v. Jennings* (2000) 81 Cal.App.4th 1301,1313-1314 [careful weighing of whether prior domestic violence evidence is more prejudicial than probative under Evid. Code, § 352 is necessary to protect the defendant's due process right to a fundamentally fair trial].)  We review the court's admission of evidence under Evidence Code section 352 for an abuse of discretion.  (*People v. Branch* (2001) 91 Cal.App.4th 274, 281-282.)

Defendant argues that all of the evidence of his prior acts of domestic violence against Demetrya should have been excluded under Evidence Code section 352 because it was more prejudicial than probative.  Not so.

First, the probative value of the prior acts evidence involving Demetrya was high. The principle factor affecting the probative value of an uncharged act is its similarity to the charged offense.  (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531-532.)  Similar acts of domestic violence are "uniquely probative" of guilt in a later accusation because domestic violence is "typically repetitive" in nature.  (*Id*. at p. 532.)  The prior acts evidence was substantially similar to the charged crimes evidence, because in both cases defendant struck the victims in the face and head and choked them during arguments. Alcohol was also a factor in the prior and charged incidents.  In combination with the

---

[5]  Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

evidence of the charged offenses, the prior acts evidence tended to show defendant used violence to control the women in his life whenever they disagreed with him.

Its high probative value notwithstanding, defendant argues the prior acts evidence involving Demetrya should have been excluded because it was more inflammatory than the charged offense evidence involving Doe. He points out that Demetrya was pregnant during two of the incidents, one in 1996 and one in 2002; two of the incidents occurred in the presence of young children; and one incident—the 2002 incident involving the belt—was directed at a young child. To be sure, the probative value of prior domestic violence evidence must be balanced against its inflammatory nature, if any, in determining its admissibility under Evidence Code section 352. (*People v. Branch, supra,* 91 Cal.App.4th at p. 282.)

But here, the prior acts evidence was no more inflammatory than the charged offense evidence. Even though neither Doe nor, apparently, defendant knew Doe was pregnant when the charged crimes occurred on July 2 and 3, 2010, and none of the charged crimes involved children, defendant's acts of physical abuse against Doe were arguably more callous than his acts against Demetrya. Defendant kidnapped Doe, threatened to take her to the mountains, kill her, and dump her body where no one would find her. Then, when Doe pleaded with defendant that her two children needed her, defendant callously said, "fuck your kids." The prior acts evidence involving Demetrya involved no overt threats against Demetrya's life or a disregard for the lifelong welfare of her children. Thus here, the court did not abuse its discretion in admitting the prior acts

14

evidence on the ground its probative value was not substantially outweighed by the probability its admission would create a substantial danger of undue prejudice. (Evid. Code, § 352.)

We next address defendant's additional claim that the court should have excluded the evidence of the 1996 incidents because they occurred more than 10 years before the charged acts occurred in July 2010. Evidence Code section 1109, subdivision (e), states: "Evidence of acts occurring more than 10 years before the charged offense is inadmissible under this section, unless the court determines that the admission of this evidence is in the interest of justice." In contrast to subdivision (a) of Evidence Code section 1109, which establishes a presumption *in favor* of the admission of prior acts evidence, "[s]ubdivision (e) establishes a presumption that conduct more than 10 years prior to the current offense is inadmissible." (*People v. Johnson, supra,* 185 Cal.App.4th at p. 539.) Nonetheless, subdivision (e) "clearly anticipates that some remote prior incidents will be deemed admissible and vests the courts with substantial discretion in setting an 'interest of justice' standard." (*Ibid*.)

As with the admission of all prior acts evidence, the admission of remote or more than 10-year-old prior acts evidence is reviewed for an abuse of discretion. (*People v. Johnson, supra,* 185 Cal.App.4th at p. 539.) In admitting the 1996 prior acts evidence, the court here noted the 1996 incidents involving Demetrya were part of "an ongoing thing," or showed a pattern of ongoing physical abuse in the relationship between defendant and Demetrya. According to Demetrya, her relationship with defendant began

15

in 1995 and ended in 2002, though they were married until 2010.  Defendant argues this was an insufficient reason to admit the 1996 prior acts evidence, but he cites no authority to support this claim.  We find it without merit.

Though "some greater justification for admissibility" is necessary under the interest of justice requirement of Evidence Code section 1109, subdivision (e), than under Evidence Code section 352, "[t]he 'interest of justice' exception is met where the trial court engaged in a balancing of factors for and against admission under [Evidence Code] section 352 and concludes, as the trial court did here, that the evidence was 'more probative than prejudicial.'"  (*People v. Johnson, supra,* 185 Cal.App.4th at pp. 539-540.)  Given that the 1996 prior acts evidence showed an ongoing pattern of physical abuse in defendant's relationship with Demetrya, was no more inflammatory than the evidence of the charged crimes involving Doe, and was highly probative of whether defendant had a propensity to physically abuse his wives and girlfriends, the court did not abuse its discretion in admitting the 1996 prior acts evidence in the interests of justice.

C.  *Remand Is Necessary to Allow the Court to Exercise its Discretion to Either Strike One of Defendant's Two Prison Prior Enhancements or Impose a One-year Consecutive Term on the Enhancement*

Defendant admitted two prison priors.  (§ 667.5, subd. (b).)  The court imposed a *concurrent* one-year term for one of the prison priors, and did not impose any sentence on the other.

The parties agree the one-year term should not have been imposed concurrently, but should have either been imposed consecutively or not imposed at all and stricken. The parties are correct. Section 667.5, subdivision (b), states, in relevant part, that: "[I]n addition and consecutive to any other sentence . . . the court shall impose a one-year term for each prior separate prison term . . . ." Still, the court is authorized to strike a prior prison term enhancement in the interests of justice pursuant to section 1385, subdivision (a). (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561.)

The parties disagree concerning the proper remedy for the error. Defendant argues the one-year term must be stricken because the record "clearly reveals that the trial court, in running the prior concurrent, did not intend to increase [his] sentence with the prior prison term enhancement . . . ." Thus, defendant suggests it is unnecessary to remand the matter for resentencing, because the court necessarily would have stricken the prison prior enhancement had it known its only options were to strike the enhancement or impose a consecutive one-year term on it. For their part, the People argue the matter must be remanded to allow the court to exercise its discretion to either impose the one-year term consecutively or strike it. The People are correct.

"Section 1385, subdivision (a), authorizes a trial court to dismiss an action 'in furtherance of justice' but requires that '[t]he reasons for the dismissal must be set forth in an order entered upon the minutes.'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1115.) Thus, when a court strikes an enhancement or declines to impose sentence on it, it must state its reasons for doing so on the record. (See *ibid.*; *People v. Orin* (1975) 13

17

Cal.3d 937, 944.)  The court here *did not strike* the prison prior enhancement, much less state its reasons for doing so on the record.

Further, and contrary to defendant's argument, the record does not unambiguously show the court would have stricken the prison prior enhancement had it understood it was required to either impose a consecutive one-year term on it or strike it.  In imposing the one-year concurrent term the court said:  "And I would order that in that matter, *he serve one year*.  I am going to run that concurrent, however."  (Italics added.)  The court's statement shows it may or may not have stricken the prison prior enhancement rather than impose a consecutive one-year term on it had it understood those were its choices, and it had no authority to impose the concurrent one-year term.  Remand is therefore necessary to allow the court to exercise its discretion to strike the enhancement or impose a one-year consecutive sentence on it.

D.  *Defendant's* Romero *Motion Was Properly Denied*

Defendant admitted one prior strike conviction, a 1998 robbery conviction.  At sentencing, defendant filed a *Romero* motion asking the court to strike the prior strike in the interests of justice.  The motion was denied, and defendant claims the denial was an abuse of the court's discretion.  We find no abuse of discretion.

Section 1385, subdivision (a), authorizes a trial court "to strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions." (*Romero, supra,* 13 Cal.4th at p. 504.)  We review the court's refusal to strike a prior strike for an abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th

18

367, 374.) The court will not have abused its discretion unless its decision was "so irrational or arbitrary that no reasonable person could agree with it," and the defendant had the burden of establishing an abuse of discretion. (*Id.* at pp. 376-377.)

The court's discretion to strike a prior strike is limited; it is guided by "established stringent standards" designed to preserve the legislative intent behind the "Three Strikes" law. (*People v. Carmony, supra*, 33 Cal.4th at p. 377; § 1385, subd. (a).) As explained in *Romero*, "the Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero, supra*, 13 Cal.4th at p. 528.) Thus, in determining whether to strike a prior strike conviction in the interests of justice the court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Defendant argues his 1998 prior strike conviction for robbery should have been stricken in part because it was over 12 years old when he committed the current offenses, and the circumstances of the robbery were not egregious. It "involved him and his girlfriend going into a supermarket and stealing food totaling about $20 and did not involve substantial injury to anyone." But, as the prosecutor pointed out in opposing the

19

*Romero* motion, the crime involved defendant using a knife with a four-inch blade "to effect or try to effect his escape" from two store security personnel.

In addition, defendant's girlfriend at the time of the 1998 robbery was 16-year-old Sasha L. Even though defendant was married to Demetrya in 1998, he began a sexual relationship with Sasha L. in 1996 when she was 16 years old and he was around 22 years old. Sasha L. was pregnant with defendant's child when she was a juvenile. According to the prosecutor, Sasha L. "suffered extreme domestic violence from age 16 to age 19 at the hands of the defendant, including beatings, false imprisonment and strangulation." In 1999, defendant was convicted of violating section 273.5, a felony, against Sasha L., the same felony he was convicted of committing in July 2010 against Doe.[6]

Defendant also argues that his prior and current offenses were "fueled by alcohol and/or methamphetamine use," and during his interview with the probation department, he indicated he had an unhappy childhood and never knew his father. He notes that: "At age 10, he was molested by a teacher and when his step-father found out about the molestations, he began physically abusing [defendant], call[ing] him a 'fag,' and restricted him to his room. . . . [He] began smoking marijuana at age 12, drinking at age 14, and using methamphetamine at age 18." In a letter to the court, defendant's sister indicated she believed defendant's unstable childhood contributed to his substance abuse problems, and he really needed counseling and treatment, not more prison time.

---

[6] The court did not allow Sasha L. to testify for the prosecution at defendant's current trial because the 1999 domestic violence incident involving her was more than 10 years old. (Evid. Code, § 1109, subd. (e).)

Nonetheless, and as the court indicated in denying the motion, defendant chose to continue abusing drugs, alcohol, and women, despite numerous chances to reform. Before he committed the current offenses in 2010, defendant had only been out of custody for four of the previous 14 years. In addition to the 1998 robbery and 1999 section 273.5 convictions, in 2004 and again in 2005 he suffered felony convictions for possessing controlled substances. (Health and Saf. Code, § 11377, subd. (a).) He violated parole and probation numerous times, and in October 2005, was sentenced to five years in prison. He was released on parole in December 2009, less than seven months before he committed the current offenses in July 2010. The evidence at trial also showed defendant began physically abusing and threatening Doe shortly after his December 2009 release from prison.

Accordingly, the court did not abuse its discretion in denying defendant's *Romero* motion to strike his 1998 prior strike conviction for robbery.

## IV. DISPOSITION

The matter is remanded to the trial court for resentencing. The court is directed to either (1) strike one of defendant's two prison prior enhancements or (2) impose a consecutive one-year term on the enhancement in lieu of the one-year *concurrent* term

21

the court erroneously imposed on the enhancement.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

RAMIREZ _____
P. J.

MILLER _____
J.