[No. B073263. Second Dist., Div. Seven. Mar. 1, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY C. HARRIS et al., Defendants and Appellants.

**COUNSEL**

Leonard Samuels and Jeffrey Liebowitz, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Zaven V. Sinanian, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JOHNSON, J.—Appellants were convicted of second degree robbery of a person attempting to use an automated teller machine. Appellant, Anthony C. Harris, appeals his conviction contending it was reversible error for the trial court to deny his motion for mistrial and to fail to instruct on the lesser offenses of theft and assault. He also contends it was error to use the fact of a single conviction to enhance his sentence under Penal Code section 667, subdivision (a) for a prior felony conviction as well as for service of a prior prison term on that conviction (Pen. Code, § 667.5, subd. (b).) We affirm the judgment of conviction but find appellant's latter contention has merit and modify the judgment to strike the one-year enhancement imposed under Penal Code section 667.5, subdivision (b) for service of a prior prison term.[1]

Appellant, Robbie Hanzy, filed an opening brief and requested this court to independently review the record pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. Our independent examination of the record reveals no arguably meritorious issues affecting his case. Accordingly, we affirm appellant Hanzy's judgment of conviction in its entirety.

### FACTS AND PROCEEDINGS BELOW

On April 18, 1992, James Poindexter and Sharon Johnson had dinner in downtown Los Angeles. At approximately 11:30 p.m. they drove to a Bank of America branch at 41st Street and Western Avenue to withdraw money from an automated teller machine (ATM). Poindexter was unable to withdraw any money because the ATM computer indicated his card was damaged. They drove to a Security Pacific National Bank branch down the street. Poindexter parked his car at the curb, which was approximately 15 feet from the ATM's. There were no people on the street and very little vehicular traffic. The area around the ATM's was illuminated with overhead lights and nearby street lamps.

Poindexter got out of the car and walked to an ATM. Johnson locked the car doors and waited in the passenger seat. While Poindexter used the machine, Johnson saw two men approach in the passenger sideview mirror.

---

[1]All further statutory references are to the Penal Code.

Appellant Hanzy walked to the passenger side of the car. Appellant Harris walked up to Poindexter at the ATM. Harris told Poindexter "You know what this is. Put it back. Make it work." Poindexter told him the card was damaged and would not work in the machine. Harris replied, "Put it back. Hit some numbers." Poindexter put the card back in the ATM and entered his personal identification number. The computer screen again indicated the card was damaged. Poindexter told Harris, "Read it man. It's damaged. The card won't work." Harris told him to put it back in again. Poindexter complied and the same message appeared. For the third time, Harris told Poindexter to put the card back in the ATM. Poindexter responded if he did the machine would keep the card.

Poindexter did as he was told and, as he predicted, the ATM kept his card. Poindexter said to Harris, "It took it. Now what?" Harris replied, "Don't make me smoke you." Harris punched Poindexter on the left side of his jaw and asked him if he had any money. Poindexter believed Harris was armed because Harris had his hand up under his shirt in his waistband as if he was holding a gun. Poindexter took the $25 he had out of his pocket and handed it to Harris. When Harris asked if he had more money Poindexter also gave him all the change he had in his pocket. Poindexter then pulled his pockets inside out to show Harris he had no more money. Harris then demanded the gold chain Poindexter was wearing. Poindexter tried to stall by fumbling with the catch hoping the pair would go away. However when Harris got mad Poindexter gave the chain to him.

In the meantime appellant Hanzy tried to open the car door. He was unable to as Johnson had locked the doors. He began banging on the car's passenger side window demanding she unlock the doors. Hanzy told Poindexter to tell Johnson to open the car door "before he smoked her."

By the way Hanzy held his hand under his coat Johnson believed he had a gun. Terrified after watching her boyfriend being robbed and hit at the ATM, she slid into the driver's side of the car and drove off in search of assistance.

Johnson pulled into a gas station two blocks away. She spotted a police patrol car a few lights down and started honking and yelling. When she waved down the police she told them her boyfriend was being robbed at the Security Pacific National Bank ATM by two men with guns.

The police arrived when Harris and Hanzy were walking away. The police ordered all three men to assume a prone position on the ground until each could be handcuffed and identified. All the while Johnson was hollering "It's

not the one in the gray suit, because that's my boyfriend. It's the other two." After placing Harris and Hanzy in custody the police recovered a gold chain and $25 in United States currency from Harris's left jacket pocket.

Harris was charged with one count of second degree robbery (§ 211.) The information also alleged he had suffered a prior serious felony conviction (§ 677, subd. (a)) for which he had served a prior prison term (§ 667.5, subd. (b)). A jury found him guilty as charged and he admitted the truth of the prior conviction allegations.

Harris was sentenced to the upper term of five years on the robbery conviction plus five additional years for the prior felony conviction as well as an additional year for having served a prison term on that conviction, for a total of eleven years.

### DISCUSSION

I. *It Was Not Reversible Error to Deny a Motion for Mistrial When a Witness Mentioned Appellant's Parole Status.*

In cross-examining Johnson, defense counsel inquired how many times she had discussed the case with Poindexter. Johnson replied: "I don't know. [¶] The first two weeks it was just like—I was having nightmares. So, you know, we talked about it and stuff, because their parole officers were calling and everything and I was just nerved up—"

Defense counsel immediately asked the court to declare a mistrial. After a bench conference the court denied the motion for mistrial but granted the motion to strike Johnson's comment. The court instructed the jury to disregard the statement and "not consider it at all for any purpose whatsoever in this trial."

Harris contends it was reversible error to deny the motion for mistrial.

There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial. (See, e.g., *People* v. *Price* (1991) 1 Cal.4th 324, 431 [3 Cal.Rptr.2d 106, 821 P.2d 610] [evidence defendant could not remember dates as he had been in prison so long should have been excluded as more prejudicial than probative]; *People* v. *Bracamonte* (1981) 119 Cal.App.3d 644, 650-651 [174 Cal.Rptr. 191] [limiting instructions insufficient to overcome prejudicial effects of trying issue of guilt with truth of

prior conviction allegations]; *People* v. *Morgan* (1978) 87 Cal.App.3d 59, 76 [150 Cal.Rptr. 712] [evidence of defendant's prior criminality "obviously of a prejudicial nature"]; *People* v. *Cabrellis* (1967) 251 Cal.App.2d 681 [59 Cal.Rptr. 795] [admission of evidence of other crimes offered solely to prove defendant's bad character reversible error especially when forces defendant to give up constitutionally protected right not to have to testify in own defense].)

Whether in a given case the erroneous admission of such evidence warrants granting a mistrial or whether the error can be cured by striking the testimony and admonishing the jury rests in the sound discretion of the trial court. (*People* v. *McLain* (1988) 46 Cal.3d 97, 113 [249 Cal.Rptr. 630, 757 P.2d 569].) " 'A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions.' (*People* v. *Haskett* (1982) 30 Cal.3d 841, 854 [180 Cal.Rptr. 640, 640 P.2d 776].) Although most cases involve prosecutorial or juror misconduct as the basis for the motion, a witness's volunteered statement can also provide the basis for a finding of incurable prejudice. (See *People* v. *Rhinehart* (1973) 9 Cal.3d 139, 152 [107 Cal.Rptr. 34, 507 P.2d 642] [witness's inadvertent answer, if error, was not sufficiently prejudicial to justify mistrial].)" (*People* v. *Wharton* (1991) 53 Cal.3d 522, 565 [280 Cal.Rptr. 631, 809 P.2d 290].)

Whether or not it was an abuse of discretion to deny the defense's motion for mistrial, we conclude any error was harmless. Evidence of Harris's guilt was overwhelming and undisputed at trial. Both the victim and the witness recounted virtually identical details of how the robbery occurred. Within minutes of the robbery Harris was apprehended by police and was identified as the robber by both the victim and witness. When arrested, police discovered the victim's gold chain and money in Harris's jacket pocket. The fact the jury required less than one hour to render their verdict confirms this was not a close case on the issue of guilt.

In these circumstances, it is not reasonably probable Harris would have obtained a more favorable result had the incidental remark about his parole status not been made. (See *People* v. *Williams* (1981) 115 Cal.App.3d 446, 453 [171 Cal.Rptr. 401]; *People* v. *Morgan, supra,* 87 Cal.App.3d at p. 76 [error harmless in light of overwhelming evidence of guilt]; *People* v. *Stinson* (1963) 214 Cal.App.2d 476, 482-483 [29 Cal.Rptr. 695] [same].)

## II. *It Was Not Error to Refuse Instructions on the Lesser Offenses of Theft and Assault.*

 Defense counsel requested instructions be given on the lesser offenses of theft and assault. The trial court denied the request on the basis there was no evidence to support instructions on lesser offenses.

In *People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311], the Supreme Court discussed a trial court's duty to instruct on lesser included offenses. "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. . . . The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. . . . That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. . . , but not when there is no evidence that the offense was less than that charged." (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 323-324, citations and internal quotation marks omitted.)

In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] the Supreme Court applied many of the same principles regarding lesser included offenses to instructions on lesser related offenses. There the court stated ". . . where there is no evidence that the offense is less than or other than that charged and instructions need not be given on lesser included offenses, they need not be given on lesser related offenses. If the jury disbelieves the People's evidence in these cases, there is no incentive to convict and no conflict with the right to a reliable fact-finding process. Therefore, the first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (35 Cal.3d at p. 531.)

 Thus, whether the trial court erred in failing to give instructions on the lesser offenses, whether included in or related to the greater offense, turns on whether there was some evidentiary basis on which the jury could have found the offense to be less than robbery.

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. (§ 211.) Harris contends the evidence raised a question whether the element of fear was present because when asked whether he was frightened, Poindexter replied "Not really."

This statement out of context may appear significant. However the record reveals Poindexter was asked whether he was frightened *at the time* he told Harris the ATM would keep his card if he reinserted it. To that question Poindexter replied "Not really." In later testimony Poindexter admitted he was both scared and angry. He stated he complied with Harris's demands because "it wasn't worth dying over" and because he did not want "any more problems" from these men. Thus, the balance of Poindexter's testimony indicated he in fact complied with the robber's demands out of fear.

In any event, the crime of robbery may be accomplished by means of *either* force *or* fear. The undisputed evidence showed Harris punched Poindexter before he took his gold chain and, according to Poindexter's testimony, even before he demanded Poindexter's money. Thus, even if the element of fear was totally lacking, and it was not, there was undisputed evidence Harris used force to accomplish the taking.

Nonetheless, Harris contends the evidence was ambiguous on the question whether the force used was in conjunction with the robbery or whether it was a separate, independent act. He makes this contention based on evidence he punched Poindexter only after he made him try to get money from the ATM. For this reason Harris contends he was entitled to an instruction on the separate offense of assault.

This contention must be rejected. The entire episode took only a few minutes. The threats and use of force were integral parts of the overall crime of robbery. Harris's punch induced Poindexter, at the very least, to part with his gold chain, and, according to Poindexter's testimony, his cash as well. There is no rational way to view the evidence in this case as constituting discrete criminal acts as opposed to a single act of robbery, as Harris suggests. Consequently, on this record there is no basis, other than an unexplainable rejection of the prosecution evidence, on which the jury could have found the offense to be something other than robbery. (*People* v. *Geiger, supra*, 35 Cal.3d at p. 531.)

Accordingly, we conclude it was not error to reject instructions on the lesser offenses of theft and assault.

III. *The One-year Enhancement Imposed Pursuant to Section 667.5, Subdivision (b) Must Be Stricken.*

Based on a prior felony conviction for second degree robbery on September 23, 1986 (case No. A787885), Harris received a five-year enhancement pursuant to section 667, subdivision (a) as well as a one-year

enhancement pursuant to section 667.5, subdivision (b) for service of a prison term on that conviction.

Harris argues we should follow the Court of Appeal's decision in *People v. Cortez* (1992) 6 Cal.App.4th 1202, 1213 [8 Cal.Rptr.2d 580], and other cases, and hold double punishment based on the fact of the same prior conviction is improper. The People urge us to instead adopt the reasoning of *People* v. *Michael* (Cal.App.)█ and uphold the additional one-year enhancement for service of a prior prison term on the basis proof of prior convictions should be used without limitation. (Cal. Const., art. I, § 28, subd. (f).)

While this case was pending on appeal the Supreme Court decided *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163]. That decision resolved the conflicting Court of Appeal decisions regarding use of prior serious felony convictions for enhancement purposes and held when dual punishment is imposed based on the fact of the same prior felony conviction, the greater punishment, and only that one, may be imposed.

In *Jones* the defendant was given cumulative sentence enhancements under sections 667 and 667.5 for a prior conviction for kidnapping. On appeal he contended California law and the federal Constitution prohibited two enhancements for the one prior offense.

The Supreme Court began its analysis by noting Proposition 8 added section 667 to the Penal Code and amended the California Constitution to provide: "Any prior felony conviction . . . shall subsequently be used without limitation for purposes of . . . enhancement of sentence in any criminal proceeding." (Cal. Const., art. I, § 28, subd. (f).) Several years before the electorate enacted Proposition 8 the Legislature had enacted section 667.5 to provide for sentence enhancements for persons who had served prior prison terms. To resolve the present appeal the *Jones* court looked to its earlier decision in *People* v. *Prather* (1990) 50 Cal.3d 428 [267 Cal.Rptr. 605, 787 P.2d 1012], which interpreted the interrelationship of these provisions.

In *People* v. *Prather, supra,* 50 Cal.3d 428, the Supreme Court considered whether the new constitutional amendment providing for unlimited use of prior convictions had any application in a situation where, if enhancements imposed under section 667.5 for service of prior prison terms were allowed to stand, the sentence would violate the double-the-base-term limitation (§ 1170.1, subd. (g).) The *Prather* court concluded the double-the-base-term limitation did not apply because section 667.5, subdivision (b) is "aimed

primarily at the underlying felony conviction." The *Prather* court stated ". . . section 667.5(b), fairly read, merely provides a special sentence enhancement for that particular *subset* of 'prior felony convictions' that were deemed serious enough by earlier sentencing courts to warrant actual imprisonment. . . ." (*Prather, supra,* 50 Cal.3d at p. 440, italics in original.) Finding enhancements under either section were based on the same fact of the conviction, the *Prather* court held "prior felony convictions" in article I, section 28, subdivision (f) of the California Constitution "necessarily includes the lesser category of enhancements based on prior felony convictions for which imprisonment was imposed." (50 Cal.3d at p. 440.)

Turning to the case before it, the Supreme Court held enhancements under both section 667 and 667.5 based on the same prior felony conviction violated both the principles of *Prather*. The high court found both sections were intended as punishment for the underlying conviction, and thus were governed by section 667, subdivision (b). This subdivision provides: "This section shall not be applied when the punishment imposed under other provisions of law would result in a longer term of imprisonment. . . ." The court held the most reasonable reading of the subsection is when multiple statutory enhancement provisions are available for the same prior offense, one of which is a section 667 enhancement, the greatest enhancement, but only that one, will apply. (*People* v. *Jones, supra,* 5 Cal.4th at p. 1150.)

Accordingly, the court remanded the case to the trial court with directions to strike the one-year enhancement imposed under section 667.5, subdivision (b) for his prior offense of kidnapping.

The identical circumstances are present in the case at bar. Based on a single prior conviction for robbery in 1986, appellant's sentence was enhanced under both sections 667 and 667.5, subdivision (b). Under the *Jones* court interpretation of section 667, subdivision (b), only the greater sentence enhancement of five years imposed under section 667, subdivision (a) for the September 23, 1986, robbery conviction is proper. Accordingly, the lesser enhancement of one year imposed under section 667.5, subdivision (b) for that same conviction must be stricken in accordance with the decision in *People* v. *Jones, supra,* 5 Cal.4th at page 1153.

### DISPOSITION

Appellant Hanzy's judgment of conviction is affirmed. Appellant Harris's judgment of conviction is modified to strike the one-year sentence

enhancement imposed pursuant to section 667.5, subdivision (b). As modified, the judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellants' petition for review by the Suprerme Court was denied May 25, 1994. Mosk, J., was of the opinion that the petition should be granted.