Filed 10/29/15  P. v. Garcia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RANDY GARCIA,<br><br>    Defendant and Appellant. | F068604<br><br>(Super. Ct. No. 12CM2042)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Detjen, Acting P.J., Peña, J. and Smith, J.

## INTRODUCTION

Appellant Randy Garcia was convicted of first degree residential burglary. (Pen. Code, §§ 459/460, subd. (a).)[1] In addition, an enhancement allegation attached for three prior prison terms was found true (§ 667.5, subd. (b)). Appellant was sentenced to nine years in prison with credit for 376 days in custody.

Appellant contends the trial court erred in denying his motion for mistrial after a police officer volunteered during his testimony that paperwork located in appellant's vehicle indicated appellant was a possible suspect in other burglaries. Appellant argues that the testimony was incurably prejudicial. We disagree and affirm the judgment.

## FACTS

On June 14, 2012, Harold Van Heeringen left his home in Hanford, California around 4:30 a.m. At approximately 8:58 a.m., two of Van Heeringen's neighbors, Bobby Robertson and Diana Trafny, saw people carry items out of Van Heeringen's garage and load the items into a vehicle. Robertson saw two males and one female, one of the men drove off on Van Heeringen's motorcycle; Trafny saw one male and one female. Trafny, approximately 10 to 15 feet away from the male, identified the male as appellant.[2] Appellant was carrying a box to a gold four-door Chevy Cavalier parked in Van Heeringen's driveway. Trafny contacted Van Heeringen and then the police.

Police Officer Anthony Pellouso from the Hanford Police Department arrived on scene and observed that the house appeared to have been rummaged through and doors appeared to have been broken into. When Van Heeringen arrived home, he discovered various items missing from his residence. Ten minutes after his arrival, Officer Pellouso

---

[1]    All undesignated statutory references are to the Penal Code unless otherwise indicated.

[2]    Robertson was unable to identify a suspect. Trafny was unable to positively identify appellant pursuant to an in-field show-up and misidentified him in a photographic lineup on June 14, 2012, but identified appellant at the courthouse both the day before trial and during trial.

2.

responded to another residence where he located a gold Chevy Cavalier. Officer Pellouso searched the unlocked vehicle and discovered various items identified by Van Heeringen as some of the items taken from his home. Paperwork was also discovered in the vehicle containing appellant's name.

Appellant was questioned by Detective Mathews of the Hanford Police Department about the burglary. Appellant told Detective Mathews that his acquaintance, Juan, asked him for a ride that morning. Juan, an unidentified male, and appellant entered Van Heeringen's residence after Juan brandished a firearm at appellant. Juan took appellant's keys and appellant began walking. A friend who happened to drive by, Pete, gave appellant a ride back to Juan's house, where appellant contacted his sister to tell her that someone stole his vehicle.

After a 30-minute break in questioning, appellant indicated he initially went to the home of a man named "Weasel" (Jose Valdes), where Valdes and an unidentified male asked appellant for a ride. Valdes had brandished the firearm, forced appellant inside Van Heeringen's garage, and taken appellant's keys. Pete then drove appellant to Valdes's home where appellant's sister, a man named Guy Quinones, and Valdes's daughter were waiting. Throughout police questioning, appellant referred to Juan and Valdes as two different people.

### Defense Case

At trial, appellant testified in his defense. On June 14, 2012, an acquaintance, Juan, called appellant repeatedly to ask for a ride. He testified that during police questioning, he learned that Juan was actually a man named Jose Valdes, who went by the street moniker "Weasel." Appellant picked up Juan, as well as another male Juan referred to as "Guy," and drove them to a residential area using a Chevy Cavalier appellant borrowed.[3] Juan brandished a firearm against appellant and forced him to exit

---

[3]     Appellant referred to the Chevy Cavalier as his vehicle, this opinion does the same for purposes of clarity.

3.

the vehicle and enter Van Heeringen's garage. Juan took appellant's car keys and then allowed him to leave.

Appellant testified that after leaving Van Heeringen's home, he was given a ride back to Juan's home by his friend Pete. As he exited the vehicle, appellant saw his sister walking toward him. Appellant told his sister to contact the police and then left to meet with his parole officer for an appointment where he was picked up for questioning about the burglary.

Appellant maintained during police questioning and at trial that he did not see a female participate in the burglary.

### *Evidence of Prior Criminality*

During trial, the prosecution called Officer Anthony Pellouso to testify about his role in the burglary investigation. On direct examination, the prosecutor asked Officer Pellouso about the significance of a document recovered in appellant's gold Chevy Cavalier. Officer Pellouso responded, "It had the name Randy Garcia on it, which was a possible suspect of other burglaries that we had prior to this one. And [he] was also the registered owner of the vehicle, I believe." After the prosecution moved to admit items of evidence, a discussion was held outside the jury's presence about Officer Pellouso's testimony.

Defense counsel moved for a mistrial. The trial court determined that the testimony was prejudicial, albeit inadvertently elicited, and withheld ruling on defense counsel's motion until the following morning. The next day, the court ruled that an admonition would be sufficient to cure any prejudice from Officer Pellouso's testimony. The court based its decision on the fact that the challenged testimony was brief and fleeting, it elicited no noticeable reaction from the jury, and the jury was already aware that appellant was a felon on parole.

The trial court struck Officer Pellouso's testimony referring to appellant as a possible suspect in other burglaries. The court further admonished the jury to disregard

the testimony, not consider it for any purpose, not discuss it, and not allow it to enter into their deliberations. Jurors indicated that they would not have difficulty following the court's admonition.

## DENIAL OF MISTRIAL MOTION

A trial court should only grant a motion for mistrial when the opportunity for a fair trial has been irreparably lost and cannot be cured by admonition or instruction. (*People v. Avila* (2006) 38 Cal.4th 491, 573.) "'"Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." [Citation.]'" (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1581; see also *People v. Avila, supra*, 38 Cal.4th at p. 573.) Accordingly, we review a trial court's ruling on a motion for mistrial for abuse of discretion. (*People v. Valdez* (2004) 32 Cal.4th 73, 128.)

A witness's inadvertent or volunteered statement can provide the basis for a finding of incurable prejudice. (*People v. Wharton* (1991) 53 Cal.3d 522, 565 (*Wharton*).) A statement "exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris*, *supra,* 22 Cal.App.4th at p. 1580 [witness's reference to defendant's parole officer on cross-examination resulted in harmless error where trial court struck the comment, instructed the jury to disregard it, and defendant's guilt was overwhelming]; *People v. Valdez*, *supra*, 32 Cal.4th at p. 128 [although the issue was waived on appeal, curative instruction would have mitigated prejudice resulting from officer's statement he interviewed defendant at Chino Institute, referencing additional criminality]; *People v. Morgan* (1978) 87 Cal.App.3d 59, 76 [testimony referring to defendant's parolee status was prejudicial but finding reversal inappropriate in light of defendant's overwhelming guilt], disapproved on other grounds in *People v. Kimble* (1988) 44 Cal.3d 480, 497-498.)

Here, Officer Pellouso testified that appellant was a possible suspect in other burglaries. While his brief statement referenced appellant's possible involvement in other burglaries, the same type of crime appellant was on trial for, the trial court was well within its discretion to decline to declare a mistrial. There is insufficient evidence from which to conclude appellant's chance of receiving a fair trial was irreparably damaged as a result of the foregoing statement.

In *Wharton, supra*, 53 Cal.3d 522, our Supreme Court found no abuse of discretion in denying the defendant's motion for mistrial. During trial, the court instructed the prosecutor to warn a witness, a jail inmate, that he could not implicate the defendant for injuries caused by another person. (*Id*. at p. 563.) The witness, who had visible facial injuries from a beating he sustained, made an unsolicited statement during his testimony that while the defendant did not beat him, he "got the word out." (*Id*. at p. 564.) Outside the presence of the jury, defense counsel moved for mistrial based on the statement. (*Ibid*.) Following a weekend break, the court admonished the jury to disregard the witness's statement. (*Id*. at p. 565.)

The Supreme Court found the witness's statement was not incurably prejudicial. (*Wharton, supra*, 53 Cal.3d at p. 566.) It reasoned that the defendant was not directly implicated in the beating based on the witness's statement, a sufficient admonition was given to the jury, defense counsel's argument that the jury would disregard the admonition after a weekend break was mere speculation, and most importantly, the witness clarified on cross-examination that a third party had beaten him. (*Ibid*.)

In both this case and *Wharton*, the challenged testimony was the result of inadvertent or volunteered statements which were not deliberately elicited by the prosecution. Similar to *Wharton*, the trial court here responded to Officer Pellouso's brief and fleeting reference to appellant being a suspect in other burglaries with a strong and prompt admonition to the jury and by striking the challenged testimony. (*Wharton, supra,* 53 Cal.3d at p. 565.) Jurors indicated that they understood the admonition and

6.

would not have a problem complying with it. The jury is presumed to be reasonable and to have followed the trial court's instructions and advisements. (*People v. Anzalone* (2013) 56 Cal.4th 545, 557; *People v. Thomas* (2012) 54 Cal.4th 908, 940; *People v. Harris* (1994) 9 Cal.4th 407, 426.)

We further note that any prejudice resulting from Officer Pellouso's testimony is outweighed by the strength of the evidence presented against appellant at trial. In *People v. Rolon* (1967) 66 Cal.2d 690, 693-694, the court held that "[a]n improper reference to a prior conviction may be grounds for reversal in itself [citations] but is nonprejudicial 'in the light of a record which points convincingly to guilt....' [Citation]." Here, the record points convincingly toward appellant's guilt.

Trafny identified appellant as the man she observed carrying a box from Van Heeringen's garage to a gold Chevy Cavalier. Within one hour of Trafny's call to police, appellant's gold Chevy Cavalier was located with items belonging to Van Heeringen inside the vehicle. Appellant told two different versions of the events of the burglary to the police. His testimony at trial was inconsistent with prior versions he told authorities, as well as the eyewitness testimony of Van Heeringen's neighbors.

During police questioning, appellant initially told Detective Mathews that he and two other men, Juan and an unidentified male, entered Van Heeringen's residence after Juan brandished a firearm at him. After leaving Van Heeringen's home, appellant was given a ride by his friend Pete, and then contacted his sister.

After a 30-minute break in questioning, appellant changed his story. In this version of events, appellant referred to Juan and Jose Valdes (Weasel) as two separate people. Appellant indicated that he went over to Valdes's home where he picked up Valdes and another unidentified male. Valdes brandished the firearm at appellant and then took appellant's vehicle. In this version, Pete gave appellant a ride back to Valdes's house where appellant's sister, Guy Quinones, and Valdes's daughter were waiting.

7.

At trial, appellant testified that Juan and Valdes were actually the same person. He also indicated that Valdes had actually referred to the unidentified male participant as "Guy." In each version, appellant claimed he never saw a female participant, contrary to the testimony of Van Heeringen's neighbors. False statements by a defendant may be admitted to "support an inference of consciousness of guilt." (*People v. Showers* (1968) 68 Cal.2d 639, 643.) Appellant's testimony, which conflicted with his own prior statements, as well as the testimony of eyewitnesses whose liberty interests were not at stake, support the inference that his versions were all false and reflect a consciousness of guilt.

Appellant also testified that he was wearing a global positioning system ankle monitor at the time of the burglary because he was a felon on parole. The only reasonable inference to be drawn from his admission to being at the location of the burglary is that he had to manufacture an exculpatory version of events since his ankle monitor was tracking his location. Additionally, because the jury was already aware that appellant was a felon on parole, the fact that he was a suspect in another uncharged crime would not have been surprising for them to learn.

Appellant's proximity to the burglary, Trafny's identification of appellant, the discovery of various items belonging to Van Heeringen in appellant's vehicle, and appellant's inconsistent version of events, point strongly toward his guilt. In light of the evidence against appellant, the brief and fleeting nature of the challenged testimony, the prompt and direct admonition by the court, and the jury's indication that they would follow the admonition, we find that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

## DISPOSITION

The judgment is affirmed.