Filed 12/23/21  P. v. Peters CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092829 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFECOD20180008535) |
| v. | |
| SHANE PETERS, | |
| Defendant and Appellant. | |

A jury found defendant Shane Peters guilty of robbery and residential burglary.  It also found true the enhancement allegations he was armed with a firearm and the victim was elderly.  The trial court sentenced defendant to five years in prison, stayed the sentence, and placed him on formal probation for five years.

Defendant appeals, arguing the trial court erred when it denied his codefendant's motion for a mistrial because the prosecutor elicited testimony that the search of the apartment defendant shared with his codefendant was a "parole compliance search."

1

Defendant also argues his counsel was ineffective because he failed to join in the mistrial motion. We shall affirm.

## I. BACKGROUND

On July 11, 2018, the 71-year-old victim was at home. Around 1:30 p.m., the doorbell rang and he opened his front door. The man standing at his door was an "[a]verage guy," about 5 feet 7 inches or 5 feet 8 inches tall, and Hispanic.

The man at the door asked the victim, " 'Does Bradley live here?' " The victim responded, " 'No. I'm sorry,' " and started to close the door.

All of a sudden, codefendant Tyrone Walker appeared behind the victim holding a large kitchen knife. Walker had a bandana covering the bottom of his face.

Walker repeatedly demanded money from the victim. The victim led Walker to the victim's bedroom where Walker told the victim to lie face down on the bed and put a blanket over him. As he was lying on the bed, the victim saw the other man going through his dresser.

Walker demanded to know where the victim kept his gun. The victim told him it was in the headboard of the bed, and Walker took it. The victim also testified to the loss of jewelry and a jewelry box that was in his home.

The victim's daughter, G.B., and her two children arrived at the victim's house. Walker confronted her with a gun. He ordered G.B. down on the floor and told G.B. and her children to empty their pockets. Throughout the ordeal, the man repeatedly demanded money from G.B. The man went towards the kitchen and yelled out, " 'Hey, are you finished? Let's go.' " After a few minutes, G.B. heard the victim coming down the hall.

The victim testified that while he was on the bed, he heard the men speak amongst themselves before they left. The victim waited five or 10 minutes after the men left and got up and found his daughter and her two children on the ground.

An officer showed the victim two photo lineups that day. In the first lineup, the victim identified Walker as a potential suspect. The victim also identified the knife Walker was wielding. The victim could not identify defendant in that lineup. G.B. could not identify anyone in the photo lineup shown to her.

The prosecutor presented surveillance camera video to the jury from neighboring homes. Walker's car is a white Mazda with a distinctive sticker in the front windshield. The surveillance video showed that white four-door car drive up to the scene and park across the street from the victim's home at 1:07 p.m. on the day of the robbery.

The video showed a dark-complected man get out of the driver's seat at 1:17 p.m. Next, it showed the passenger, described as a light-complected man or a Hispanic male wearing a black beanie cap, get out of the car. The two men walked towards the victim's home. About a half-hour later, the video showed the passenger run from the area of the victim's house back to the car. Another video showed the darker-complected man run down the driveway and disappear behind a tree. Stockton Police Detective Monique Stewart testified a separate video showed Walker get into the car. The next video showed the car reverse and drive away.

The jury saw video surveillance from Bianchi Market, which is about five miles from defendant's home. That video showed Walker's white four-door car pull into the parking lot the morning of the crime. Walker got out of the car and went inside the store at approximately 8:30 a.m. Defendant was sitting in the passenger seat.

Another video showed defendant sitting in the passenger seat of Walker's car at Bianchi Market at 3:39 p.m. later that same day. It also showed Walker in the driver's seat and the distinctive sticker on the front windshield of the car.

Officers found blue latex gloves, a pair of black gloves, and a knit beanie type of cap in the gutter in front of a home a few blocks from the victim's home. Defendant's DNA was located on the inside of one of the blue gloves.

When asked about her part in the investigation by the prosecutor, Stockton Police Detective Adrianna Arista responded she was "assigned to the community response team at the time and [they] were asked to conduct a parole compliance search at [an address on] Calandria Street." That address was the same as Walker and defendant's apartment.

Police arrested defendant and Walker at 7:00 p.m. the day of the robbery. When they arrived, defendant was standing outside the open door of Walker's car, and Walker was sitting in the driver's seat.

In their apartment, detectives found the victim's gun and holster. The detectives found two more blue latex gloves in a trash can in the kitchen. In one bedroom, detectives found defendant's identification. In the other bedroom, officers found several items linked to the robbery, including a black ski mask, a knife, and a jewelry box with assorted pieces of jewelry.

Prior to trial, Walker's counsel brought a motion in limine to exclude evidence Walker was on parole. The court ruled the parties should not mention parole during the trial.

Immediately upon Officer Arista's statement that the search of defendant and Walker's apartment was a "parole compliance search," Walker's counsel objected and moved to strike the testimony. Counsel engaged in an unreported bench discussion and then the examination continued without any further reference to any parole conditions. At the next break, the court and counsel engaged in the following colloquy:

"[Walker's counsel]: I need to put something on the record.

"[Court]: Now the jury's gone. And [Walker's counsel], we'll go to you, and then [defendant's counsel], and then we'll hear [the prosecutor]'s thoughts. We'll make it brief because it is brief.

"[Walker's counsel]: Right. So, to summarize for the record, there was an in limine motion not to mention the –

"[Court]: Basis for the . . . .

4

"[Walker's counsel]: – the prior prison or parole status of Mr. Walker. And that was granted, and it included admonishing the witnesses. So my objection at the time – I just objected and moved to strike. I think the only possible remedy is – for that would be number one, for the Court to – well, I guess there would be three: One would be to do nothing; number two, would be to admonish the jury to disregard the statement; and number three would be to declare a mistrial. I don't – I mean, I think I know where this is going, but the first two options, doing nothing or does nothing, number two, admonishing the jury would emphasize it, and so the only viable option is a mistrial. So that's my motion.

"[Court]: So noted. You wanna join that, [defendant's counsel]?

"[Defendant's counsel]: I didn't have that kind of motion made at in limine.

"[Court]: Okay.

"[Defendant's counsel]: My concern is, among other things, what impact that might have as to Mr. Peters. He is not – the best of my knowledge, he has not ever been arrested for anything other than minor traffic stuff – well, I'm sorry. I consider traffic stuff minor, period.

"[Court]: Okay.

"[Defendant's counsel]: So I don't know what kind of affect [*sic*] that has. And the only way to cure that is – I ponder that at the moment – would be to, in fact, admonish the jury. The problem with admonishing the jury about it overall is to simply draw attention to the fact.

"[Court]: Okay.

"[Defendant's counsel]: I'm not excited about the idea of a mistrial period. We've got a lot of time in this, and a lot of money in it –

"[Court]: Okay.

"[Defendant's counsel]: – and I would like to actually ponder that for a bit before I go there.

5

"[Court]:  Well, you think about it.  [Prosecutor], thank you.  At this juncture, any comment?

"[Prosecutor]:  Either – whatever decision the Court makes.  I think we need to strike the reason for her search or the reason for stopping from the record.

"[Court]:  Well, I'm gonna leave it in the record at this point.  We wouldn't read it back to the jury.

"[Prosecutor]:  I don't think it should ever be read back to the jury, Your Honor, but I'd defer to the Court.

"[Court]:  Well, look, it's a brief fleeting mention.  And I'm not gonna do anything for these reasons:  Everybody's aware, to admonish the jury highlights it and creates more problems.  And I think given the brief mention here, it's an extreme remedy to declare a mistrial, so I'm just gonna leave it there.  This has come up on other cases more than once, and I've found the best remedy, based on experience, is to just let it lay, okay.  So that would be the Court's ruling."

The jury found defendant guilty of robbery (Pen. Code, § 211—count 1)[1] and burglary (§ 459—count 2).  The jury found true the enhancements that the victim was elderly (§ 667.9, subd. (a)) and that defendant was armed with a firearm (§ 12022, subd. (a)(1)).  The jury found defendant not guilty of two counts of robbery (§ 211—counts 3 and 5) and three counts of assault with a deadly weapon (§ 245 subd. (a)(2)—counts 4, 6, and 7).

The court sentenced defendant to five years in prison: the low term of three years on count 1 and consecutive one-year terms for each of the enhancements.  The court sentenced defendant to the low term of two years on count 2 and consecutive one-year terms for each of the enhancements.  The court stayed the sentence for count 2 pursuant

---

[1] Unspecified statutory references are to the Penal Code.

6

to section 654. The court stayed execution of the entire sentence and granted defendant formal probation for five years. Defendant was given credit for 931 days in custody.

## II. DISCUSSION

Defendant contends the trial court erred in refusing to declare a mistrial after the detective testified the search of defendant and Walker's apartment was a parole compliance search. He further argues his attorney was ineffective for failing to join in his codefendant's motion. We conclude defendant forfeited this argument by not raising it in the trial court and reject his argument that he received ineffective assistance of counsel.

The parties agree evidence that either defendant or Walker was on parole should not have been admitted in this case. We agree. "There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580.)

We also agree with the Attorney General that defendant forfeited this argument because he did not raise the objection at trial and rejected the idea of a curative instruction. (*People v. Valdez* (2004) 32 Cal.4th 73, 124.)

We turn to defendant's claim of ineffective assistance of counsel. "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Haskett* (1982) 30 Cal.3d 841, 854 (*Haskett*).) "Accordingly, it would be a rare case in which the merits of a mistrial motion were so clear that counsel's failure to make the motion would amount to ineffective assistance. Nonetheless, defendant could conceivably prove incompetence if his counsel's omission was shown to be grounded in ignorance or misapplication of the law rather than tactical considerations [citations] and if the motion for mistrial bore strong potential for success." (*Id*. at pp. 854-855.) Defendant cannot demonstrate the first prong of this test.

7

Here, defendant makes no argument that counsel's decision not to join the motion for mistrial was grounded in ignorance or misapplication of the law. Nor does the record support such a conclusion. Rather, counsel's analysis on the record went directly to the heart of the issue. He understood the potential impact of the evidence and that it should have been excluded, but he believed that impact would be minimal on his client.

Further, at the time the detective made the statement, the court and jury had already received the testimony of 15 other witnesses over four days of trial. The jury had already seen many videos showing defendant and Walker in front of the victim's home at the time of the robbery and together before and after that the same day. Following the comment, the jury heard the rest of Detective Arista's testimony and four additional witnesses to complete the five days of evidence.

Given the brief nature of the comment and the stage during trial that it was made, counsel understood the only way to cure error was through a limiting instruction and concluded that instruction would "simply draw attention to the fact." It is entirely possible defense counsel believed, given the state of the evidence, that his client's chances would be less favorable during a second trial. (*Haskett, supra*, 30 Cal.3d at p. 855.) Accordingly, multiple possible tactical reasons for counsel's decisions appear in this record and defendant has failed to establish the first prong of his claim that he received ineffective assistance of counsel. Having determined that defendant has failed to satisfy the first prong of the *Strickland* test, that counsel's representation was deficient, we need not address his arguments with respect to the second prong, prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 697.)

## III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

KRAUSE, J.