Filed 4/21/22  P. v. Walker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092894 |
| Plaintiff and Respondent, | (Super. Ct. No. STKCRFECOD20180008536) |
| v. | |
| TYRONE WALKER, | |
| Defendant and Appellant. | |

A jury found defendant Tyrone Walker guilty of three counts of robbery, one count of residential burglary, three counts of assault with a firearm, and one count of a criminal threat.  It also found true the enhancement allegations he personally used a nonfirearm and firearm weapon and that the victim was elderly.  The trial court sentenced defendant to 142 years to life in prison.

Defendant appeals, arguing the trial court erred when it denied his motion for a mistrial because the prosecutor elicited testimony that the search of the apartment defendant shared with his codefendant was a parole compliance search.  We shall affirm.

1

# I. BACKGROUND

On July 11, 2018, the 71-year-old victim was at home watching television. Around 1:30 p.m., the doorbell rang and he opened his front door. The man standing at his door was average, about 5 feet 7 inches or 5 feet 8 inches tall, and Hispanic.

All of a sudden, defendant appeared behind the victim holding a large kitchen knife. Defendant had a bandana covering the bottom of his face. Defendant is married to the victim's daughter W.

Defendant repeatedly demanded money from the victim. Defendant also demanded the victim's gun and took it. The victim testified to the loss of cash, jewelry, and a jewelry box that was in his home.

The victim's daughter, G.B., and her two children arrived at the victim's house during the incident. G.B. testified a large man confronted her with a gun. He ordered G.B. down on the floor and told G.B. and her children to empty their pockets. Throughout the ordeal, the man repeatedly demanded money from G.B. The man went towards the kitchen and yelled out, " 'Hey, are you finished? Let's go.' " After a few minutes, G.B. heard the victim coming down the hall.

An officer showed the victim two photo lineups that day. In the first lineup, the victim identified defendant as a potential suspect. The victim also identified the knife defendant was wielding.

The prosecutor presented surveillance camera video to the jury from neighboring homes. Defendant's car is a white Mazda with a distinctive sticker on the front windshield. The surveillance video showed a white four-door car drive up to the scene and park across the street from the victim's home at 1:07 p.m. on the day of the robbery.

The video showed a dark-complected man getting out of the driver's seat of the car and a light-complected man or a Hispanic male getting out of the passenger seat at 1:17 p.m. The two men walked towards the victim's home. About a half-hour later, the video showed the driver and passenger returning from the area of the victim's house back

2

to the car. Stockton Police Detective Monique Stewart testified a separate video (that was missing) showed defendant getting into the car.

The jury saw video surveillance from a market about five miles from defendant's home. Defendant got out of the car and went inside the market at approximately 8:30 a.m. the morning of the crime. A man officers suspect was codefendant Shane Peters was sitting in the passenger seat.

Another video showed Peters sitting in the passenger seat of defendant's car at the market at 3:39 p.m. that same day. The video also showed an African-American man in the driver's seat and the distinctive sticker on the front windshield of the car.

When asked about her part in the investigation by the prosecutor, Stockton Police Detective Adrianna Arista responded she was "assigned to the community response team at the time and [they] were asked to conduct a parole compliance search at" the apartment shared by defendant and Peters.

Police arrested defendant and Peters on the day of the robbery. When they arrived, Peters was standing outside the open door of defendant's car and defendant was sitting in the driver's seat.

In the living room of their apartment, officers found a utility bill in defendant's name. Detectives also found the victim's gun and holster. In one bedroom, detectives found Peters's identification. In the other bedroom, officers found several items linked to the robbery, including a black ski mask, a knife, and a jewelry box with assorted pieces of jewelry.

Prior to trial, defendant's counsel brought a motion in limine to exclude evidence defendant was on parole. The court ruled the parties should not mention parole during the trial.

Immediately upon Officer Arista's statement that the search of defendant and Peters's apartment was a "parole compliance search," defendant's counsel objected and moved to strike the testimony. Counsel engaged in an unreported bench discussion and

3

then the examination continued without any further reference to any parole conditions. At the next break, the court and counsel engaged in the following colloquy:

"[Defendant's counsel]: I need to put something on the record.

"THE COURT: Now the jury's gone. And [defendant's counsel], we'll go to you, and then [Peters's counsel], and then we'll hear [the prosecutor]'s thoughts. We'll make it brief because it is brief.

"[Defendant's counsel]: Right. So, to summarize for the record, there was an in limine motion not to mention the --

"THE COURT: Basis for the . . . .

"[Defendant's counsel]: -- the prior prison or parole status of [defendant]. And that was granted, and it included admonishing the witnesses. So my objection at the time -- I just objected and moved to strike. I think the only possible remedy is -- for that would be number one, for the Court to -- well, I guess there would be three: One would be to do nothing; number two would be to admonish the jury to disregard the statement; and number three would be to declare a mistrial. I don't -- I mean, I think I know where this is going, but the first two options, doing nothing or does nothing, number two, admonishing the jury would emphasize it, and so the only viable option is a mistrial. So that's my motion.

"THE COURT: So noted. You wanna join that, [Peters's counsel]?

"[Peters's counsel]: I didn't have that kind of motion made at in limine.

" [¶] . . . [¶]

"THE COURT: Well, you think about it. [Prosecutor], thank you. At this juncture, any comment?

"[Prosecutor]: Either -- whatever decision the Court makes. I think we need to strike the reason for her search or the reason for stopping from the record.

"THE COURT: Well, I'm going to leave it in the record at this point. We wouldn't read it back to the jury.

4

"[Prosecutor]:  I don't think it should ever be read back to the jury, Your Honor, but I'd defer to the Court.

"THE COURT:  Well, look, it's a brief fleeting mention.  And I'm not gonna do anything for these reasons:  Everybody's aware, to admonish the jury highlights it and creates more problems.  And I think given the brief mention here, it's an extreme remedy to declare a mistrial, so I'm just gonna leave it there.  This has come up on other cases more than once, and I've found the best remedy, based on experience, is just let it lay, okay.  So that would be the Court's ruling."

The jury found defendant guilty of three counts of robbery (Pen. Code, § 211—counts 1, 3, & 5),[1] one count of residential burglary (§ 459—count 2), three counts of assault with a firearm (§ 245, subd. (a)(2)—counts 4, 6, & 7), and one count of a criminal threat (§ 422, subd. (a)—count 8).  The jury found true the enhancements the victim was elderly as to counts 1 and 2.  (§ 667.9, subd. (a).)  As to counts 1 through 7, the jury found the enhancement defendant personally used a knife and a firearm true.  (§§ 12022, subd. (b)(1), 12022.5, subd. (a), 12022.53, subd. (b).)  The information further alleged defendant had two "strike" prior convictions for second degree robbery.  (§§ 1170.12, subd. (b), 667, subd. (d).)  Defendant waived his right to a jury trial on the prior conviction allegations, and the court found them true.

The court sentenced defendant to an aggregate term of 42 years plus 100 years to life in state prison.

---

[1]  Unspecified statutory references are to the Penal Code.

## II. DISCUSSION

Defendant contends the trial court erred in refusing to declare a mistrial when the detective testified the search of defendant and Peters's apartment was a parole compliance search.[2] We disagree.

The parties agree evidence either defendant or Peters was on parole should not have been admitted in this case. We agree. "There is little doubt exposing a jury to a defendant's prior criminality presents the possibility of prejudicing a defendant's case and rendering suspect the outcome of the trial." (*People v. Harris* (1994) 22 Cal.App.4th 1575, 1580.)

Denial of a motion for mistrial based on the erroneous admission of other crimes evidence lies in the trial court's discretion. (*People v. Welch* (1999) 20 Cal.4th 701, 749.) "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction." (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)

Generally, where a reference to inadmissible evidence is brief and fleeting, an admonition from the court to ignore the evidence is sufficient to cure prejudice. (*People v. Perez* (2018) 4 Cal.5th 421, 460; *People v. Franklin* (2016) 248 Cal.App.4th 938, 954.) In that case, a mistrial is not required. (*Perez, supra*, at p. 460.)

Even without a curative instruction, fleeting references to defendant's criminal past do not require a mistrial. (*People v. Bolden* (2002) 29 Cal.4th 515, 555.) In *Bolden,* a witness referred briefly to a parole office in connection with obtaining the defendant's address in a nonresponsive answer to the prosecutor's question. (*Id.* at p. 554.) The prosecutor immediately interrupted the witness before the answer was completed. (*Ibid.*) In finding no error in the trial court's denial of the motion for a mistrial, our Supreme

---

[2] Defendant sought to file a supplemental brief on the impact of Assembly Bill No. 518 (2021-2022 Reg. Sess) (Stats. 2021, ch. 441) on his case. We granted that application but defendant subsequently withdrew his request.

Court stated, "[i]t is doubtful that any reasonable juror would infer from the fleeting reference to a parole office that defendant had served a prison term for a prior felony conviction. The incident was not significant in the context of the entire guilt trial, and the trial court did not abuse its discretion in ruling that defendant's chances of receiving a fair trial had not been irreparably damaged." (*Id*. at p. 555; see also *People v*. *Hines* (1997) 15 Cal.4th 997, 1038 [where counsel requests the court give no curative instruction that would cure impact from inadmissible evidence, the trial judge did not abuse its discretion in denying motion for a mistrial].)

Similarly, here, the detective's reference to a parole compliance search was ambiguous, brief, and fleeting. It was vague as to whether parole referred to defendant or his codefendant. The flow of the direct examination was immediately halted by defendant's counsel's objection and the off-the-record conversation. When testimony resumed, the detective made no further mention of parole, nor did that fact come up again. At the time the detective made the statement, the court and jury had already received the testimony of 15 other witnesses over four days of trial and watched comprehensive video evidence. Defendant's attorney rejected a limiting instruction stating, "admonishing the jury would emphasize it, and so the only viable option is a mistrial."

The evidence of defendant's guilt in this case was strong. He was the husband of the victim's daughter and tentatively identified by the victim. The victim and his daughter's descriptions of defendant were consistent with that identification. The witnesses and independent video evidence tied defendant to the victim's home immediately before the robbery and running away immediately after it. Officers found the stolen gun and jewelry at defendant's apartment the evening of the robbery and in the room that presumably belonged to him.

The trial court's determination the single inadmissible snippet of testimony was brief and fleeting and that it required no corrective action provides the court's implicit

7

assessment of the lack of prejudice caused by the admission of this statement. (*People v. Jennings* (1991) 53 Cal.3d 334, 380 [court's statement, " 'we can just drop it, of course, depending on what your perception is of that testimony and how it's being viewed by the jury' " was implicit assessment of lack of prejudice].)[3] Having been present throughout the trial, hearing the witnesses and the offending testimony, the trial court was in the best position to determine the effect of this evidence on the trial. Its conclusion the evidence did not warrant a mistrial was not an abuse of discretion.

### III.  DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

KRAUSE, J.

---

[3] We note defendant does not argue the trial court erred in not striking this testimony from the record or not giving a limiting instruction to the jury. Further, defendant does not argue his counsel was ineffective for eschewing either of these remedies.